SOUTH CAROLINA & GA. R. R. CO AND SOUTHERN RY. CO.
v. AMERICAN TELEPHONE & TELEGRAPH CO.

SOUTH BOUND R. R. CO. AND FLORIDA CEN. AND PEN. R.
R. CO. v. SAME.

1. CONDEMNATION—RAILROADS—TELEPHONE COMPANIES.—The act, 23
St., 61, provides for condemnation by telephone company of right of
way of a railroad company over such lands held by it in fee and
condemnation.

2. IBID.—IBID.—IBID.—The petition of the telephone company states all
facts necessary for information of railroad company in the location
and construction of its line on the right of way (which is not triable
here, but in condemnation proceedings), and the covenants therein
pleaded when judgment is entered thereon become record rights of
the railroad company, which it can enforce by suit.

3. CONSTITUTION.—CONDEMNATION STATUTE, 23 St., 61, is not violative
of U. S. Con. XIVth amend., sec. 1; S. C. Con., art. I., sec. 5; U.
S. Con. Vth amend.; S. C. Con., art. I., sec. 17, and art. IX., sec. 20.

4. INJUNCTION—BAR—PRESUMPTION.—IF CONDEMNATION PROCEEDING
be enjoined and upon notice discontinued, no appeal taken from the
order; no further action taken in prosecution of injunction suit, and
a second condemnation proceeding be commenced, it is not enjoined
by the first injunction, as that is presumed discontinued also.

5. CONDEMNATION—RAILROAD—TELEGRAPH Co.—PARTIES.—In a pro-
ceeding by telephone company to condemn right of way along right
of way of railroad along which a telegraph company has already
acquired right of way, the rights of the telegraph company cannot
be considered until it is made a party to the proceedings.

Before GAGE, J., Orangeburg, October, 1902.   Affirmed.

Action by South Carolina and Georgia Railroad and
Southern Railway Co. against American Telephone and
Telegraph Co., and South Bound Railroad and Florida Cen-
tral and Peninsular Railroad against same. The following
is the Circuit decree:

"It has been decided that this Court has jurisdiction to
try these causes.   63 S. C., 199.   The actions are for a per-
manent order of injunction to restrain the defendant com-
pany from erection of telephone and telegraph poles, strung

with wires, along the rights of way of the plaintiff companies from Charleston to Branchville, and from the latter point to Augusta and Columbia; and from Columbia to the Savannah River towards Savannah. The defendant company is proceeding to condemn for itself a right of way upon the plaintiffs' right of way, and is proceeding under the statute law of this State, enacted 23d February, 1899, 23 Stats., 61. The cause was heard upon the testimony taken by a referee, without any finding by him on the issues of law or fact. The argument was elaborate and helpful. I have given long and patient consideration to the cause, and have reached my conclusions not without misgivings. The issues of fact are not difficult, for the witnesses are not numerous, and the cross-examinations reveal there is not much variance betwixt them. The issues of law are numerous, novel and intricate. I shall, for brevity, refer to the defendant as the telephone company, and to the Western Union Telegraph Company as the telegraph company, and to the plaintiff as the railroad company.

"At the outset, the plaintiffs contend that the order for temporary injunction made by Judge Townsend, 26th May, 1899, is still of force. That order was made in a proceeding which was on 17th June discontinued; this by order on an *ex parte* motion by the telephone company. The order for a discontinuance, unappealed from, is valid, and with it the previous order for a temporary injunction becomes a dead thing, for when the proceeding fell every order in it fell.

"Thereafter, on the 15th August, 1899, the telephone company began another and second proceeding, to compass the same ends which had been sought by the first proceeding. And it is now contended by plaintiffs that the telephone company, preliminary to this second proceeding, did not in writing offer or propose to the president or general manager of the railroad companies to agree upon terms, etc. (act 1899, sec. 8), but that the proposal made in July, 1899, referred back to that made before the first proceeding was begun. The reference in the second to the first proposal of March, 1899, was made to designate the subject matter of

the proposal of August, 1899.    I think the last proposal was a substantial compliance with the act, and the railroad company gave no definite response thereto, but whether that be so or not, the manner and sufficiency of notice to the railroad company raises an issue determinable in the law proceeding begun by the telephone company, and not in this action.    63 S. C., 204.    Granting that the proposal of August, 1899, was indefinite in a description of the exact right which was desired, it was yet the duty of the railroad company to have declined the proposal.

"In the next place, it is contended by plaintiffs that the telephone company's proceeding should be enjoined, because it is an attempt to condemn a way over lands held by the railroad company in fee, and the statute makes no provision for the condemnation of lands so held by such a corporation.    The contention proceeds upon a strict construction of the terminology of the act.    Section 2 thereof makes provision for the construction of telephone lines 'over or under *lands* of any person, company or corporation *other than railroads.*'    Section 3 thereof makes provision for the construction of lines 'upon the *right of way* of railroad companies.'    There is no warrant, in exact terminology, for the construction of lines over *lands* of a railroad company.    Did the General Assembly intend to exempt from this burden the land of railroad corporations, while it was imposed on the lands of private citizens and on the lands of other corporations?    If such was its intention, the act is void, because repugnant to the Constitution of both the State and the Union, wherein an equal protection of the laws is guaranteed to every citizen.    That such was its intention ought not to be concluded, unless by necessary inference. The issue here is, not whether a parcel of land *unrelated to a railroad track,* is liable to the burden imposed by the statute. Under the broadest construction of the language of the act, that would be a serious issue.    The land here involved is described in the petition as that along the 'main line' of the railroad, and the *locus* of the telephone line is described to be

within twelve (12) to forty (40) feet of the centre of the *'track.'* The expression 'right of way,' was manifestly used to designate land where a railroad company had the legal right to run and did run its cars, to wit: its physical roadbed. *Postal Tel. Cable Co.* v. *So. Ry. Co.,* 90 Fed. Rep., 31, 89 Fed. Rep., 190.

"The injunction is prayed on the further ground, that the telephone company fails to show clearly 'how and in what manner it proposes to construct its lines upon such right of way.' This ground I shall consider along with those which assail the statute on constitutional grounds.

The act in question authorizes the construction, maintenance and operation of telephone lines, and provides for the assessment of just compensation for such rights. The *first section* empowers a telephone company to construct its line (1) upon any public lands of the State; (2) upon any of the highways or public roads of the State; (3) over any of the waters of the State; (4)˙ over the lands of any person or corporation of the State; (5) along, upon and over the right of way of any railroad company in the State. It further provides that the lines so constructed shall not endanger the safety of persons traveling the highways, navigating the waters, or operating the engine or cars on the railroads. It further provides that just compensation shall first be paid land owners and railroad companies for such· right. The *second section* designates a procedure to secure the aforesaid rights over lands of persons and corporations, other than railway corporations; and the procedure is that provided by law for the condemnation of ways by railroad companies. The *third section* provides two procedures to secure the aforesaid rights over the rights of way of railway companies. The procedures are different from those designated in the second section. The first named procedure is by contract with the railway company. The second named procedure is a pleading by petition on the part of the telephone company; but the second procedure is only permissible when the first has failed. And just here, in logical

order, but in numeral disorder, section 8 prescribes one method of ascertaining the fact of a failure to make a contract; but the method there indicated is not exclusive of every other method. And again, as already intimated in the same sort of order, section 4 provides that the fact of a failure to agree shall be determined by the Court, not in this equity cause, but in the proceeding on the law side instituted by petition, and as preliminary to a trial by a jury of the amount of damages to be assessed. Recurring to the procedure by petition, the statute directs that it make six specific allegations, to wit: 1st. Where the telephone company was incorporated. 2d. That the telephone company has made an effort to agree with the railroad company for the right' to construct and maintain its line, and has failed. 3d. That the telephone company has given bond for costs, etc. 4th. A statement of how and in what manner the telephone company proposes to construct its lines on the right of way. 5th. An offer to remove, at its own expense, any of its structures, if at any time they interfere with the right of the railroad company to construct additional tracks, switches, · crossings, warehouses, depots, turn tables, water tanks, or any other structures for the use of the railroad company; upon reasonable notice given (by the railroad company) to the telephone company at its expense, to such other points or places upon said rights of way as may be agreed upon by said companies. 6th. A promise not to come in contact with or interfere with any other telegraph or telephone lines already constructed on the right of way. These allegations are all made in the petition, in the following named paragraphs thereof, to wit: the 1st, 6th, 7th, 5th and 8th. The same third section provides, that the telephone company shall institute only one proceeding by petition against the same railway company, and the damages therein assessed shall be ascertained for the entire length of the railroad in this State. It also provides for a removal by the railroad company of the cause to any other county through which the road runs. The *fourth section* provides for service of the petition, the issu-

ance of process against the railroad company, the docketing of the cause, and the oath of the jury.    The other provisions of that section were recited in conclusion with the allegations required to be made by the third section.    The *fifth section* provides for the procedure of trial, argument of counsel, charge of the Judge, and the form of verdict and of the judgment thereon.    The *sixth section* provides for mistrials. The *seventh section* provides for an appeal of the party aggrieved to the Supreme Court, but declares the telephone company, upon payment of the verdict, may proceed to construct its line, notwithstanding the appeal.    The provisions of the *eighth section* have already been united in connection with those of the third.    The *ninth section* provides for the execution by the telephone company of a bond for costs, etc.    And that concludes the act.

"Recurring to the petition required by the statute, filed by the telephone company, the plaintiffs do not contend that its allegations are insufficient, except perhaps those of the fourth paragraph.    Indeed, the petition contains many more allegations than the statute requires, and includes subjects which the statute does not refer to.    And with reference to the fourth allegation, the objection is not so much to its terms as to the proof thereunder, to wit: 'the telephone company's failure to *show* how and in what manner it proposes to construct its line.'    In this cause the Supreme Court held, 'the act seems to have been prepared with scrupulous care to prevent the trial of any issues except those involved in the petition, together with the question as to the amount of damages to be paid the (railroad company) by the (telephone company').    63 S. C., 204.    The issues involved in the petition, therefore, are triable in the special proceeding on the law side, and one of those issues is, how and in what manner the telephone company proposes to construct its lines on the railroad company's right of way.    That issue, therefore, is not triable in this cause on the equity side of the Court.

"But granting it is, and in order to compass every question and end this cause, I am of the opinion the pleading and

the proof fix with practical certainty how and in what manner the line is to be constructed. The thing to be constructed is of modern and novel design; it touches the ground only once in every fifty yards; it digs no cuts and piles up no fills; it impedes no water course, nor does it erect a bridge. The main line of the railroad described is as well defined on the maps of the State as is the bed of a chief river. The designation of posts to be sunk along the main line of the railroad betwixt twelve and forty feet from the centre of the track, for a distance of a hundred miles, is sufficiently definite. *St. Louis & C. R. Co.* v. *Postal Tel. Co.,* 51 N. E. Rep., 382.

"The fifth and sixth allegations of the petition and many of the fourth are *covenants,* and when judgment shall have been entered for the railroad company, they become record rights of that company, enforcible by a Court whenever the telephone company may undertake to violate them. This is so, just as much as if those rights had been fixed as suggested in the first procedure, to wit: by a contract betwixt the parties.

"Next, then, comes the always grave issue, is the act in violation of the rights guaranteed to the railroad company by the Constitution of this State or that of the Union? An act of the General Assembly ought not to be so adjudged unless it so be beyond a reasonable doubt. Cooley Const. Lim., p. 88. The plaintiffs rely on the following provisions of the two Constitutions, to wit: *As to equal protection of the laws:* U. S. 14th amendment, sec. 1, So. Ca., art. I., sec. 5. *As to due process of law:* U. S. 5th amendment, So. Ca., art. I., sec. 5. *As to just compensation:* U. S. 5th amendment, So. Ca., art. I., sec. 17. *As to full compensation:* So. Ca., art. IX., sec. 20. Granted there must be some substantial reasons for the legislature to prescribe one procedure for a corporation to condemn a way over the *land* of another, and a materially different procedure to condemn a way over the *right of way* of a railroad company. The law must protect equally—that is, in like man-

30—65

ner—all those who are like circumstanced.   The inequality indicated by the plaintiff is: 1st.   The allowance of only one proceeding in one county to condemn a way in many counties.   2d.   The absence, in the statute, of any provision for an inspection by the jury of the right of way, which is the subject of condemnation; inasmuch as neither of those two provisions obtain in a procedure to condemn a way over the lands of another.   Code of Laws, 1902, sec. 2, 188. Recurring to the statute, it undertakes to classify and deal with five species of property subject to public uses, to wit: lands belonging to the public, ways belonging to the public, waters belonging to the public, lands of persons and rights of way belonging to railway companies.   These classes are essentially of a different character, the one from the other. Inasmuch as the first three classes of property belong to the State, the legislature may grant to a public corporation the right to use them without compensation, and, therefore, without a procedure for condemnation.   The fourth and fifth classes are radically different from each other, both in their legal and in their physical features.   One is defined as a corporeal hereditament, and the other as an incorporeal hereditament.   One has metes and bounds across which a surveyor can stake his way, and around and across which a jury may walk; and the other stretches itself, life the Gulf Stream, across hundreds of miles.   It cannot be a legal objection simply that a jury of one county is empowered to try issues, the subject matter of which lies in another county. That is a matter of *venue* which the legislature may change at its pleasure.   A railroad corporation is suable in any one of the counties through which its way runs, no matter where the subject matter of the controversy exists, so it exists in one of them.   Betwixt Columbia and Charleston, the South Carolina and Georgia Railroad traverses five counties, and in Orangeburg alone, it covers not less than forty miles, according to public maps.   It would be arbitrary, and a burden to the railroad company, for the legislature to cut the road in Orangeburg into sections of two miles or even five

miles, and try an issue for each section. Ways across land are condemned piecemeal of necessity, the land owner's rights end with his line, and cannot be confounded with those of his neighbor across the line. If one citizen owned *land* stretching from Charleston to Columbia, one jury could, under the law, condemn a way over it, in one county, at one sitting, because there would be no other procedure to resort to. And with reference to an inspection of the premises, the statute is silent. Under it the jury may inspect the premises either on their own motion, or on motion of either side, and under the order of the Court. One thing submitted to the jury is, the 'question as to the amount of damages to be paid to the defendant.' The oath of the jury requires it 'to assess just compensation to which the (railroad company) is entitled for the construction, maintenance and operation of its lines upon the right of way.' In making that assessment, the jury is in open Court, face to face with witnesses, who may describe every mile of the way, and name every feature of hardship to the railroad company. It is a trial under the rules of the Court, and these rules allow, and in some instances require, an inspection of the *locus*. In the very nature of the case, few features of the right of way would need inspection, for men do not need to inspect those things which are matters of common observation. Juries often try actions for damage to real estate, and never see the damage complained of. They do see it when all the circumstances indicate that a sight of it would help them to reach a just conclusion.

"I pass now to a consideration of that due process of law, without which the citizen cannot be deprived of his property. It is contended by the plaintiffs that the act: (1) Does not permit Judge or jury to decide if the lines to be erected are those allowed by the act, and if they are not, the railroad company has no remedy. (2) Does not provide for making all persons having an interest in the land parties to the condemnation proceedings. (3) Does not provide that the telephone company shall, after construction, help maintain

the way.    Due process of law means the law of the land,
independent of the statute under consideration; and the law
of the land means that 'which hears before it condemns;
which proceeds upon enquiry, and renders judgment only
after trial.'    Cooley on Const. Lim., 438.    'But when
property is appropriated by the government to public uses,
different considerations from those which regard the contro-
versies between man and man must prevail, different pro-
ceedings are required, and we have only to see whether the
interference can be justified by the established rules appli-
cable to the special case.'    Cooley Const. Lim., p. 441.    The
special case here is the condemnation, and the compensation
to be allowed therefor, of a public way upon another and
established public way.    The established rules of law require
that on those issues the owner of the servient estate has the
right to be heard.    The telephone company was organized
for public purposes, its charter conferred on it the right to
condemn a way across lands, and across ways already estab-
lished.    It must be admitted that ways already held for
public uses, may be dedicated by public authority for further
public uses.    ·The statute prescribes the procedure for such
rededication.    Under that procedure, can the railroad com-
pany be there heard on: (1) Whether the line the telephone
company proposes to erect is that authorized by the statute;
and (2) what damage will such erection do to the railroad
company?    The statute declares in general terms how the
line must be construed, to wit: 'So as not to endanger the
safety of persons, or to interfere with the use, or in the
operation and running of engines and cars of such railways.'
(Par. 1.)    The statute further declares the telephone com-
pany must file a petition and allege in it 'how and in what
manner it proposes to construct its lines.'    The petition has
been filed, and alleges in specific terms of what material and
how the line is to be built, how close it will come to the track,
how it shall cross the track, and be so 'constructed as not
to endanger the safety of persons, or interfere with the
operation and running of engines,' etc.    (Par. 5.)    The

oath of the jury demands of it to assess just compensation to which the (railroad) is entitled from the (telephone company) for the construction, maintenance and operation of its lines upon the right of way of the (railroad) *in the manner set out in the petition, etc.* And so it is, the jury must hear evidence of how the line is to be constructed, and must determine if such construction will endanger the lives of persons, or interfere with the running of engines. The same words, 'in the manner set out in the petition,' shall be written in the verdict also; so that the verdict cannot be found unless the jury first agree that the line testified to will not endanger the lives of citizens, and will not interfere with the operation and running of engines. That, then, must be the (other) 'issue of fact involved' in the proceeding, besides the 'question as to the amount of dangers,' etc. (Sec. 4, act.) Again, the statute declares what testimony shall be admissible on the trial of the proceeding, to wit: testimony as to the *issues* of fact involved, and as to what damage the railroad will suffer, etc. The first six lines of sec. 5 of the statute is not in apt language. But that section manifestly provides for testimony on the issues of fact made by the petition, and on the other issues of fact not made by the petition, to wit: damage to the railroad company. It is true, that the act seems to shut off a verdict, finding that the line would endanger the lives of persons, or would interfere with the running of engines. Such a conclusion could be expressed in a special verdict, but such verdicts are only permissible in actions, and this is a special proceeding. If, however, the issues last above named are not triable in the special proceeding, because there be no warrant for a verdict determining them, yet *they are triable in this equitable cause,* and if here found against the railroad company, the parties may proceed in the special proceeding to try there the issue of damage to the railroad company. In other words, the act will not be held void because it does not provide for the trial of an issue which another forum does try, and the trial of which is there proffered by a proper pleading (par. 12, complaint), fol-

lowed by relevant testimony. On the other hand, if the issues so proffered and determined here, be found for the railroad company, then the company will be entitled to have the special proceeding permanently enjoined.

"Before considering the issues of fact above referred to, there yet remains to examine if the act must fail because it makes no provision for a trial of the right set up by the railroad company for the Western Union Telegraph Company. It is not clear from the testimony what is the contract right of that company. The receiver undertook to grant such exclusive right 'as far as he legally may.' The contract term ended 1st April, 1900, after which time either party thereto could terminate the same on one year's notice to the other party. The railroad company got its right by a statute, and for a public purpose. It could not divest the public of its interest therein directly by a sale, neither can it do so indirectly by a contract for the exclusive use. If the railroad company made a contract with the Western Union Telegraph Company which it was not empowered to make, then the telegraph company's remedy is against the railroad company, and not against the public, or any one acting under public authority.

"And finally, has the railroad company established its allegation, that the erection of the telephone line would endanger the lives of persons, or interfere with the running of engines on the track? The right of a railroad company in the way it uses, is like the right of any holder of an interest in land—it is subject to public uses. It may be the public cannot lay a burden on the way which would be equivalent to its destruction. How great a burden can be so placed, is first a matter for the consideration of the legislature. The exact issue here is, not whether the legislature could authorize the construction of more than one telephone line on the right of way, but whether it can authorize the construction of one line thereon, a telegraph line being already constructed here. Unquestionably, so many lines might be constructed as would *obstruct* and *destroy* the way. In

such a case the Courts would find some method to avert the wrong. I can well understand on theory how a railroad company, engaged in the hazardous business of running ponderous trains at a high speed, ought to have large and almost exclusive dominion over its way. But when the companies took the easement, they took it subject to other burdens; and there is no authority in a Court to make absolute title which was not so when granted. Furthermore, the testimony in this case shows that what in theory looks like a hazard, is not one in fact. In many places the railroad line is flanked on both sides by a line of poles and wires. The witnesses testified that accidents to trains and to the public from that source were rare. The right of way from Charleston to Columbia embraces, for most of the distance, one hundred feet on each side of the track, and in no place is the distance less than twenty-five feet on each side thereof. It is true, the witnesses testified there was an element of danger in the erection of a second line; but on the cross-examination that opinion was not reinforced by any detail of facts.

"And thus all the issues have been compassed which were made in the argument of counsel. I am of the opinion the complaint should be dismissed, the injunction heretofore granted dissolved, and it is so ordered."

PLAINTIFFS'-APPELLANTS' EXCEPTIONS.—The plaintiffs respectfully ask the Supreme Court to reverse this decree for the following reasons, to wit:

"*First. Previous injunction outstanding.*—Because his Honor erred in holding that the order of discontinuance of June 17th, 1899, unappealed from, was valid, and carried with it the previous order for temporary injunction; inasmuch as the injunction proceeding fell, and every order in it fell also. Whereas, it is respectfully submitted that the injunction order of his Honor, Judge Townsend, dated May 26th, 1899, was in the injunction suit and not in the condemnation proceedings which were discontinued; which injunc-

tion suit was not affected by the discontinuance of the said condemnation proceedings.

"*Second. Erroneous decisions, matters of law.*—(a) Because his Honor erred in holding that other issues of fact besides the questions as to the amount of damages and incorporation of the company could be considered and decided in the condemnation proceedings. It being respectfully submitted that only such questions of fact could be decided in the condemnation proceedings as the statute requires to be alleged in the petition.

"(b) Because his Honor erred in holding that the telephone condemnation act provides for the trial of issues of fact both made by the statutory petition, and for issues of fact not made by it, and that it had been so held in 63 S. C., 199; and that 'conclusions could be expressed in a special verdict.' Whereas, he should have held such latter issues not triable in the condemnation proceedings, and that the Supreme Court had so held in 63 S. C., 199.

"(c) Because his Honor erred in holding as follows: 'Granting that the proposal of August, 1899, was indefinite in a description of the exact right which was desired, it was yet the duty of the railroad company to have declined the proposal;' it being respectfully submitted that the statute does not require such action on the part of the railroad company, and such was not its duty.

"(d) Because his Honor erred in holding that the allegations of the fifth and sixth paragraphs of the petition of the telephone company, and many allegations of the fourth, were covenants, and under judgment in the condemnation proceeding would become record contract rights enforcible by the Court in favor of the railroad company, whenever the telephone company undertook to violate them.

"(e) Because his Honor erred in holding that in the condemnation proceeding the jury would have the right to inspect the premises in the different counties.

"(f) His Honor erred in holding that if one citizen owned land, stretching from Charleston to Columbia, one

jury in one county, at one sitting, could condemn a right of way over it; it being respectfully submitted that in such case separate proceedings in each county would be necessary.

"*Third. Erroneous decisions, matters of fact.*—(a) Because his Honor erred in holding that under the pleadings and proof there was practical certainty as to how and in what manner the said line of telephone company was to be constructed on the railroad property; and that the petition alleged in specific terms how the poles should be located, how the line was to be built, how close it should come to the track, and how it should cross the track of the railroad company.

"(b) *Agreement as to terms.*—(1) Because it is respectfully submitted that his Honor should have held that no effort to agree upon terms had been made to either of the plaintiffs in accordance with the intent and spirit of the act under which the defendant was proceeding, to wit: an act entitled, etc., approved February 3d, 1899. (2) Because his Honor should have held that the defendant had made no effort to agree upon terms with the plaintiff, the South Carolina and Georgia Railroad Company. (3) Because his Honor erred in holding that the failure of the parties to agree, as contemplated by the act, could be shown otherwise than in the method prescribed by section 8 of the said act, to wit: by a letter written by an agent or attorney for the telegraph or telephone company, proposing to the president or general manager of the railroad company to agree to terms, and by receiving no definite response within thirty days, it being respectfully submitted that such method is exclusive of all others. (4) Because his Honor erred in holding that there was a substantial compliance with the act by the telephone company with regard to the notice necessary and preliminary to the second proceeding. It being respectfully submitted that no notice of any kind was given to the South Carolina and Georgia Railroad Company, or its president or general manager, as to the condemnation proceedings sought to be enjoined.

"(c) Because his Honor erred in holding that the erection

of the telephone line would not endanger the lives of persons or interfere with the business of the railroad company; and his Honor further erred in undertaking to decide this question of fact. Whereas, it is respectfully submitted that the testimony clearly shows that the public safety would be endangered and the management of its railroad property interfered with by the erection of additional telephone and telegraph lines. And his Honor should not have undertaken to decide this question at all; because it could not be decided in the injunction suit; and under the rulings of the Supreme Court in this case, it could not have been decided in the condemnation proceedings; thus making the telephone condemnation act void as not affording due process and remedy.

"(d) *Right of way on land.*—(1) Because his Honor erred in holding that the expression 'right of way' used in the statute was intended to designate land where the railroad company had the legal right to run its cars; whereas, it is respectfully submitted his Honor should have held that these words did not include lands held and owned in fee, and that therefore the statute did not apply to such lands. (2) Because his Honor erred in holding that the railroad company having obtained its right by statute could not divest the public of its interest therein by a sale, nor indirectly by a contract for exclusive use; whereas, his Honor should have held, that a part of the land of the railroad was held in fee and not acquired under statute at all; and further, that even as to the rest, while the public might be able to condemn a right of way over the railroad property, it could not do so without provisions which would respect and provide for the rights of all other parties showing an interest therein.

"*Fourth. Error in Judge taking jurisdiction to decide.*— It is respectfully submitted that his Honor erred in undertaking to decide at all many of the questions of law and fact in his decree and referred to in these exceptions, for the following reasons:

"(a) Because his Honor erred in holding that all the issues of fact, if not triable in the special condemnation pro-

ceeding, because there was no warrant for a verdict determining them, could yet be tried in the equitable cause; and his Honor erred in so undertaking in the injunction suit to try them; whereas, his Honor should have held that these issues were not triable in the condemnation proceeding, nor in the proceeding for injunction; and their determination being necessary, the act, therefore, was void because not providing due process of law.

"(b) And, further, it is respectfully submitted that his Honor should only have decided such questions of law or fact as were necessary to show the propriety of granting a permanent injunction; and that if it appeared in the course of this inquiry that certain necessary questions of law and fact could not be decided in the condemnation proceeding, because of the failure or intention not to provide for them in the condemnation act, his Honor should, upon this defect in the act and in the condemnation proceeding, have merely granted the permanent injunction; and should not have undertaken himself to supplement, by his own decision in these questions of fact and law, the defects of the condemnation act and the condemnation proceeding under it; because to do so would be an attempt to create supplemental judicial legislation.

"*Fifth. Act unconstitutional.*—Because his Honor erred in not holding that the said act was unconstitutional, in that

"(a) It violates U. S. Const., XIV. Amend., sec. 1, and S. C. Const., art. I., sec. 5; in that it provides a different and harsher mode for condemning lands owned by railroad companies and lands owned by individuals and other companies, and thus deprives railroad companies of the equal protection of the laws of this State.

"(b) It violates U. S. Const., 5 Amend., and S. C. Const., art. I., sec. 17, and art IX., sec. 20, in that it provides for taking private property for a public use without making adequate provision for the assessment of just compensation.

"(c) It violates U. S. Const., 5 Amend., and S. C. Const., art. I., sec. 5, in that it deprives persons of property without

due process of law, in that (1) The act provides certain conditions to exist, and to be complied with, before the right to condemn can be exercised; and makes no provision for the determination whether such conditions do exist or have been complied with. (2) The act provides for the condemnation of property over which the railroads have a right of way, and in which other persons besides the railroad have an interest; and does not make provision for such other persons becoming parties to the proceeding. (3) The act provides that the jury shall assess compensation to the railroad companies for the right of the telegraph and telephone companies to construct, maintain and operate its lines upon the right of way of the railroad companies; but it does not provide for the assessment of compensation for the expense of the railroad companies in maintaining the right of way which is occupied by the telegraph and telephone companies.

"(d) *Unconstitutionality of act as to Western Union Telegraph Co.*—(1) Because his Honor erred in holding that it was not clear from the testimony what the contract of the Western Union Telegraph Company with the railroad company was; whereas, the contract is fully set out in the testimony and speaks plainly for itself. (2) Because his Honor erred in holding that the telegraph company's remedy was against the railroad company, and not against the public or any one acting under public authority; whereas, his Honor should have held that the telephone company was not the public, but merely proceeding under a public act, and that such public act undertook to deprive third parties of their property without just compensation or due process of law, and that the said act and proceedings under it were, therefore, void. (3) Because his Honor should have held that it appeared that the Western Union Telegraph Company had valuable vested rights of property in the property sought to be condemned, and that the condemnation act should have provided for its being made a party and protected; and that having failed to do this, the condemnation act was void and unconstitutional."

*Messrs. Joseph W. Barnwell* and *Smythe, Lee & Frost,* for appellant, cite: *As to the previous outstanding injunction:* 10 Ency. P. & P., 1036; Code, 246; 54 S. C., 472; 2 High on Inj., 1476-7, 1434; 11 Wis., 53; 4 F. R., 788. *As to construction of statute:* 7 Ency. P. & P., 468, 476, 477; Lewis Em. Dom., secs. 253, 254; 97 U. S., 659. *First notice will not suffice for second proceeding:* 7 Ency. P. & P., 485, 493; 36 Barb., 222; 19 John., 337. *Meaning of "right of way."* 2 Ency., 405; 19 Ency., 779; 105 Mass., 319; 118 U. S., 413; 10 Ency., 1101; 50 Wis., 71; Sedg. on Const. Stat. and Const. Law, 221. *Description of construction of proposed line not sufficient:* 7 Ency. P. & P., 520; 55 Hun., 198; Lew. on Em. Dom., secs. 350-1-2. *Whether proposed condemnation would interfere with running trains, statute does not provide and Court cannot decide:* 38 S. C., 308; Con., art. IX., sec. 20; 57 S. C., 324; 62 S. C., 56; 10 Ency., 2 ed., 1052; 36 S. C., 453. *The statute is unconstitutional:* 165 U. S., 155; 174 U. S., 96; 13 F. R., 722; 104 F. R., 269; Lew. on Em. Dom., secs. 317, 335, 452, 462, 483; 10 Ency., 2 ed., 1132, 1174; 36 S. C., 445; 74 N. Y., 190; 10 Wend., 9; 60 N. W., 1001; 65 N. W., 482; 40 Wis., 315; 49 La. Ann., 58; 6 Am. & Eng. Cas., 185; 68 Miss., 314; Con. S. C., art. IX., sec. 20; 10 Ency., 452; 36 S. C., 453; 57 S. C., 324; 62 S. C., 56; 47 N. Y., 157; 16 Am. Dec., 447; 7 Ency. P. & P., 520.

*Messrs. P. H. Nelson* and *Jas. F. Izlar,* contra, cite: *As to the constitutionality of the act:* 18 How., 272; 5 Otto, 714; 113 U. S., 27, 703; 115 U. S., 512; 127 U. S., 205; 165 U. S., 150, 1; 38 S. C., 116; 63 S. C., 429.

March 28, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. These two cases were heard together by agreement. The facts are set out in the decree of his Honor, the Circuit Judge, which, together with the exceptions, will be reported. The elaborate and able decree

of his Honor, the Circuit Judge, so fully disposes of the questions raised by the exceptions, that we deem it only necessary to add a few words.

The first exception assigns error on the part of the Circuit Judge, in holding that the order of discontinuance of June 17th, 1899, unappealed from, was valid and carried with it the previous order for temporary injunction, inasmuch as the injunction proceeding fell, and every order in it fell also; whereas, the appellants submit that the injunction order of his Honor, Judge Townsend, dated 26th May, 1899, was in the injunction suit, and not in the condemnation proceedings, which were discontinued; which injunction suit was not affected by the discontinuance of the said condemnation proceedings. On the 3d of April, 1899, the defendant, American Telephone and Telegraph Co., filed two proceedings for condemnation, under the act mentioned in the Circuit decree; one against the South Carolina and Georgia Railroad Co., and the other against the South Bound Railroad Co. and the Florida Central and Peninsular Railroad Co. Thereupon, on or about the 2d of May, 1899, the said railroad companies brought suit for a permanent injunction against the American Telephone and Telegraph Co. to prevent it from proceeding under said act. A rule to show cause was issued and a temporary restraining order was granted, and a hearing upon the rule was had on the 20th May, 1899, before his Honor, Judge Townsend. On the 26th May, 1899, Judge Townsend granted an order that the American Telephone and Telegraph Co. and its agents "be enjoined from proceeding or attempting to proceed under the special statutory proceedings set forth and referred to in the complaint herein, and from in any way attempting to enter upon the lands or right of way of the said plaintiffs, or from taking possession of or appropriating to its use the right of way aforesaid, until the trial and decision of this cause upon its merits." The American Telephone and Telegraph Co., on the 17th of June, 1899, obtained on an *ex parte* application an order discontinuing

said causes in the following words: "That said cause be, and the same is hereby, discontinued upon the payment of costs of said cause by the plaintiff, without prejudice and with leave to institute new proceedings, should they be so advised." Notice that this order had been granted was served upon the railroad companies. Thereafter the American Telephone and Telegraph Co. instituted new condemnation proceedings against the plaintiffs in these actions. Thereupon these plaintiffs commenced new actions for injunction, and obtained another temporary order of injunction. The first action for injunction must necessarily have been abandoned or in some way disposed of, otherwise there would have been another action pending between the same parties for the same cause at the time the second action for injunction was commenced. The commencement of the second action for injunction in itself affords evidence that the first action was abandoned or in some manner disposed of, for the law presumes that the second action for injunction would not have been instituted while the first action was pending. If the first action for injunction was abandoned or let fall, the temporary order of injunction was thereby dissolved. *Lewis* v. *Jones,* 65 S. C., 157. Furthermore, the objection that the new condemnation proceedings were in violation of the order of injunction in the first action for injunction could only be made in that case. If the new condemnation proceedings were violative of the order of injunction, the Court, nevertheless, had the right to disregard them or to give recognition to them. *Reynolds* v. *Timmons,* 7 S. C., 486. For these reasons we concur in the conclusions announced in the Circuit Judge's decree.

The appellants contend that the act under which the condemnation proceedings were instituted was void, among other reasons, because it fails to provide protection for the rights of the Western Union Telegraph Co. That company is not a party to this action, and it will be the proper time to consider its rights when it is a party to an action for that purpose.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.