**WILLIAMS et al. v. TRANSCONTINENTAL GAS PIPE LINE CORPORATION.**

Civ. A. No. 1043.

United States District Court
W. D. South Carolina, Spartanburg Division.

March 23, 1950.

L. K. Leonard, Spartanburg, S. C., for plaintiffs.

Carlisle, Brown & Carlisle, Spartanburg, S. C., Robinson, Robinson & Dreher, Columbia, S. C., for defendant.

TIMMERMAN, District Judge.

This bill in equity was brought in the Court of Common Pleas for Spartanburg County, South Carolina, for a permanent injunction against the defendant's proceeding in a condemnation action, then pending in the State court, to acquire a right-of-way for its natural gas pipe line across the petitioners' property in Spartanburg County. Served upon the defendant with the summons and petition was an order of the Court of Common Pleas for Spartanburg County directing the defendant to show cause why a temporary injunction should not be issued during the pendency of the action and temporarily restraining the defendant from pursuing the condemnation proceeding. A motion by the defendant to vacate the temporary restraining order was refused by the State court without prejudice to the right of the defendant to op-

pose the granting of a temporary injunction when that question was reached under the rule to show cause.

Prior to the return date on the rule the defendant, a Delaware corporation, then removed the cause to this Court because the suit was one of a civil nature arising under an Act of Congress regulating commerce and one between citizens of different states involving more than Three Thousand ($3000.00) Dollars. 28 U.S.C.A. §§ 1331, 1332, 1337, 1441.

The defendant filed its return to the Rule issued by the State Court, its answer and motion for judgment on the pleadings in that the petition does not state a claim against it on which relief can be granted. Therefore, the matter came before me on the petitioners' motion for a temporary injunction and the defendant's motion for judgment on the pleadings. After hearing arguments, I filed an order refusing the temporary injunction, granting the defendant's motion for judgment on the pleadings and dissolving the temporary restraining order. In that order I reserved the right to file an opinion discussing the grounds of my ruling. Because of the importance of the questions at issue here, the present opinion is therefore being filed.

The petitioners allege that they will suffer irreparable injury if the condemnation is allowed to proceed, but neither their pleadings nor affidavits show any element of injury for which they cannot be compensated in the condemnation suit. On the other hand, the defendant shows by its return and affidavits that it would be greatly prejudiced in the construction of its pipeline if it were compelled by a temporary injunction to by-pass the petitioners' property with its heavy and expensive machinery and return at a later time.

■ Under such decisions as Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972, and Rice & Adams Corp. v. Lathrop, 278 U.S. 509, 49 S.Ct. 220, 73 L.Ed. 480, the Court in determining whether to grant a temporary injunction must weigh the equities and conveniences of the parties and decide whose interests would be the more seriously prejudiced by the granting or withholding of the injunction.

■ A temporary injunction should be refused if there is grave doubt as to the petitioners' right to succeed on the merits after a full hearing. Guerlain Perfumery Corp. v. Klein, D.C., 56 F.2d 439; Knapp v. Callaway, D.C., 52 F.2d 476; Cywan v. Blair, D.C., 16 F.2d 279; Madison Square Garden Corp. v. Braddock, 3 Cir., 90 F.2d 924; Cambridge Electric Light Co. v. Atwill, D.C., 25 F.2d 485; Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 4, 1685. The merits of the present cause would therefore have to be considered by me upon petitioners' application for a temporary injunction even if the defendant had not moved for a judgment on the pleadings. Certainly no temporary injunctive relief may be granted unless a cause of action is stated, so I should first determine whether the petition here states a cause of action upon which injunctive relief may be granted.

The petition asserts three claims of illegality in the condemnation proceeding: (1) That the defendant has no right to condemn in the State court under the procedure sought to be used; (2) that under South Carolina law only political subdivisions of the State can condemn for pipe line purposes; (3) that it is not necessary for the defendant in constructing its pipe line to cross the petitioners' property at the location proposed. The second ground was withdrawn by counsel during argument because it was covered in the first ground.

The defendant's right to condemn is bestowed under the terms of the Natural Gas Act, Act of June 21, 1938, 52 Stat. 821, as amended, 15 U.S.C.A. § 717 et seq. It holds a Certificate of Public Convenience and Necessity issued by the Federal Power Commission authorizing it to construct and operate a natural gas transmission pipe line from a point in Texas through eleven intervening States, including South Carolina, to a point on the Hudson River in New York City. Paragraph (h) of Section 7 of the Natural Gas Act, 15 U.S.C.A. § 717f (h), provides that when the holder of a Certificate of Public Convenience and Necessity

cannot acquire by negotiation a necessary right-of-way to construct and maintain its pipe line "it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3000."

The Natural Gas Act is constitutional as a proper exercise of the power of Congress to regulate interstate commerce. Federal Power Commission v. Natural Gas Pipeline Co. of America, 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037. Although that decision did not involve the constitutionality of the grant of eminent domain to private natural gas transmission companies, that question was passed upon in Tennessee Gas Transmission Co. v. Thatcher, D.C.La., 84 F.Supp. 344. It was held there that Congress could constitutionally bestow the right of condemnation upon such private licensees as have been charged with the development of the national policy as to the interstate movement of natural gas. Since my order in the present case the Court of Appeals for the Fifth Circuit has affirmed this decision in an opinion filed February 27, 1950, Thatcher v. Tennessee Gas Transmission Co., 5 Cir., 180 F.2d 644.

Earlier decisions of the Supreme Court uphold the authority of Congress to grant eminent domain powers to private corporations in furtherance of interstate commerce. Luxton v. North River Bridge Co., 153 U.S. 525, 14 S.Ct. 891, 38 L.Ed. 808; Cherokee Nation v. Southern Kansas Ry. Co., 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295.

Closely analogous is the grant of the power of eminent domain to Federal Power Commission licensees under Section 21 of the Federal Power Act, 16 U.S.C.A. § 814.

The validity of this grant has been frequently recognized in Federal decisions. Oakland Club v. South Carolina Public Service Authority, 4 Cir., 110 F.2d 84; State of Missouri v. Union Elect. Lt. & Power Co., D.C., 42 F.2d 692; Grand River Dam Authority v. Going, D.C., 29 F.Supp. 316; Harris v. Central Nebraska Public Power & Irrigation Dist., D.C., 29 F.Supp. 425.

Petitioners take the position that even though the defendant has been granted the right to condemn for its pipe line right-of-way by the Natural Gas Act, it cannot enforce this right in a South Carolina court because there is no specific South Carolina statute providing a procedure for condemnation of property for pipe line purposes. The procedure used by the defendant is that provided by Section 8437 et seq. of the Code of Laws of South Carolina for 1942. Originally, this procedure was established for railway, canal and turnpike condemnations, but subsequent enactments by the South Carolina Legislature bestowing the right of eminent domain upon other private utilities have prescribed that the procedure to be followed in the exercise of the right should be the procedure set up in Section 8437. Code 1942, §§ 8532, 8540. It appears, therefore, that all private utilities having the power of eminent domain under South Carolina law exercise it through a common procedure, that provided by Section 8437 et seq. It is my opinion that the defendant properly adopted that procedure when it sought to condemn for its right-of-way in a South Carolina Court.

The right to condemn having been given by Congress in the field of interstate commerce where it is supreme, all that is needed to make the grant effective is a State court procedure which meets the requirements of due process and which can be reasonably utilized for the defendant's purpose. The procedure which it is following in South Carolina meets these requirements. It furnishes due process. Atlantic Coast-Line R. Co. v. South-Bound R. Co., 57 S.C. 317, 35 S.E. 553; South Carolina & G. R. Co. et al. v. American Telephone & Telegraph Co., 65 S.C. 459, 43 S.E. 970;

D. W. Alderman & Sons Co. v. Wilson Lumber Co., 77 S.C. 165, 57 S.E. 756. With its Clerks' juries, composed of the landowners' neighbors, to pass upon the compensation originally, and with the right of appeal therefrom to the Common Pleas Court with a *de novo* jury trial, the procedure affords every protection to the landowner.

There is no constitutional objection to Congress' providing for the utilization of State courts and State procedure in the exercise of a Federal power. On the contrary this is a device with much to commend it from a policy standpoint and is an example of wholesome cooperation between the Federal and State governments.

This mode of utilizing machinery close to the people of the States for the furthering of national interests has been accepted as constitutional since the early days of our dual form of government and has been adopted many times by Congress. The practice was discussed at length by Mr. Justice Field in United States v. Jones, 109 U.S. 513, 3 S.Ct. 346, 351, 27 L.Ed. 1015, and it was said: "Almost, if not quite, from the first year of its existence, it has been the practice of the general government, when necessary to take private property for public uses, to resort to state boards and tribunals to ascertain the value of the property, and hence the compensation to be made." In referring to the procedure which might be authorized, the Court said: "All that is required is that it shall be conducted in some fair and just manner, with opportunity to the owners of the property to present evidence as to its value, and to be heard thereon. Whether the tribunal shall be created directly by an act of congress, or one already established by the states shall be adopted for the occasion, is a mere matter of legislative discretion."

Many other Supreme Court decisions bear upon the utilization by the Federal Government of state agencies in the furtherance of Federal programs: Brown v. Gerdes, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659; Douglas v. N. Y. etc. Ry. Co., 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747; Dallemagne v. Moisan, 197 U.S. 169, 25 S.Ct. 422, 49 L.Ed. 709. See also the opinion of Mr. Justice Cardoza in Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, for a discussion of the right of the Federal and State Governments to cooperate in accomplishing a social betterment.

It may be noted that if the petitioners are correct in their contention that the defendant is barred from condemning in the State court by the fact that the South Carolina Legislature has never set up a special procedure for gas pipe line condemnations, any interstate pipe line, despite the Natural Gas Act, could be blocked from crossing South Carolina by a single landowner since the Act permits condemnation in the Federal Courts only when the amount claimed by the owner exceeds $3000.00 and it is apparent that there are many needed rights-of-way which do not have that value. In all of such cases the defendant would be powerless if it did not have the right to condemn in the State courts. I am unwilling to conclude that Congress accomplished such a futility when it passed the Natural Gas Act.

I pass then to a consideration of the petitioners' further contention that the condemnation is illegal because it is not necessary for the defendant to lay its pipe line across the petitioners' property in the manner and at the place which it proposes. There is no claim that the use of property for a pipe line is not a public purpose. The claim is merely that, in the exercise of its rights, the defendant should have run its line across the property of some one else, or crossed petitioners' property at a different place.

It is obvious that such a contention must fail. If a landowner, merely by showing that it would be possible for a utility line or highway to avoid crossing his property, could compel the condemnor to relocate its line, no power line, railroad, pipe line, or highway could ever be located properly to serve the public. The determination of what property is needed to accomplish the public purpose for which the right of eminent domain is given must of necessity rest primarily with the agency charged with carrying out the public work. There

may be cases where the condemnor so abuses its discretion or acts in such bad faith in locating its line that the courts would be justified in intervening; but usually no Judge would take upon himself the burden of deciding the best location for a utility line.

 The Federal decisions uniformly hold that, granted a valid public purpose to be furthered by condemnation, a determination by the condemnor of the necessity of a certain taking to carry out the public purpose is conclusive and cannot be examined by the Court. The rule is a corollary of the principle that when the Legislature provides for the taking of private property for a public use it may either prescribe specifically the property that may be taken, or delegate that determination to the agency, either public or private, which is charged with developing the public use. The two principles are announced together by a long line of Supreme Court decisions: Adirondack Ry. Co. v. People of State of New York, 176 U.S. 335, 20 S.Ct. 460, 44 L.Ed. 492, 499; Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135, 136; Joslin Mfg. Co. v. Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167, 1175; Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186; Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; Backus v. Fort Street Union Depot Co., 169 U.S. 557, 18 S.Ct. 445, 42 L.Ed. 853; Sears v. City of Akron, 246 U.S. 242, 38 S.Ct. 245, 62 L.Ed. 688; Shoemaker v. U. S., 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; U. S. ex rel. Tenn. Val. Authority v. Welch, 327 U.S. 546, 557, 66 S.Ct. 715, 90 L.Ed. 843, 850.

Decisions of other Federal courts are to the same effect. Coggeshall v. U. S., 4 Cir., 95 F.2d 986; U. S. ex rel. T. V. A. v. Welch, 4 Cir., 150 F.2d 613; U. S. v. Threlkeld, 10 Cir., 72 F.2d 464; Shasta Power Co. v. Walker, 9 Cir., 149 F. 568; Atlantic Coast-Line Ry. Co. v. Town of Sebring, 5 Cir., 12 F.2d 679.

American Jurisprudence thus states the rule, 18 Am.Jur. 735, Eminent Domain, Section 108: "A broad discretion is necessarily vested in those to whom the power of emi-

nent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line or location of the proposed work or improvement; and the general rule is that the Courts will not disturb their action in the absence of fraud, bad faith, or gross abuse of discretion. The landowner may not object merely because some other location might have been made or some other property obtained which would have been suitable for the purpose."

 Here there are no allegations of fraud, bad faith, or abuse of discretion by the defendant in the location of its pipe line across the property of the petitioners. The assertion that it is not necessary for the line to cross petitioners' property is no basis for injunctive relief.

In my opinion the petition does not state a claim against the defendant upon which relief can be granted. The two claims of illegality—that there is no available State court procedure for the condemnation and that it is unnecessary for the defendant to condemn the petitioners' property—are without merit as a matter of law. For this reason the defendant was entitled to judgment on the pleadings.