## BALDWIN et v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15101. Decided Dec 14, 1936

Boyd, Brooks & Wickham, Cleveland, for plaintiffs in error.

Frank T. Cullitan, Cleveland, and Charles J. McNamee, Cleveland, for defendant in error.

KLINGER, GUERNSEY and CROW, JJ, (3rd Dist), sitting by designation.

## OPINION

**By THE COURT:**

This is a proceeding in error under the former appellate practice, from the Court of Common Pleas of Cuyahoga county, Ohio. It is brought to reverse a judgment of conviction of Wilbur M. Baldwin and Kenyon V. Painter, entered after trial on a joint indictment in which the accused were charged in four counts, for violation of §710-172, GC, a criminal section of the Ohio Banking Law. On the trial a jury was waived. The four counts involved three transactions, as follows:

(1) Misapplication, consisting of causing the release from and conveyance by The Union Trust Company of Cleveland, on or about September 30, 1931, of certain parcels of land in Geauga county, Ohio, title to which was held by the bank as security in part for Painter's indebtedness to the bank. This conveyance is charged to have been made to Maude Wyeth Painter, wife of Kenyon V. Painter, without payment on the loan or substitution of other security.

(2) Misapplication, consisting of the release on or about October 3, 1931, of certain miscellaneous shares of stock, held by the bank as partial security for Painter's indebtedness to the bank, said shares having been released to Painter for his own use and benefit, without payment on the loan and with the return of inadequate security in place thereof, and causing part of said securities to be used as additional security for a loan of Kenyon V. Painter at The Chemical Bank and Trust Comany of New York.

(3) Abstraction of the same stocks involved in the second count, consisting of

the unlawful taking and removal of same from the bank, and the conversion of the same to Painter's use and benefit.

The transaction in the third count is the same as that involved in the second count, that of October 3, 1931, it being charged in the second count as misapplication and in the third count as abstraction.

(4) Misapplication, consisting of the release, on or about October 23, 1931, of 7000 shares of stock of the Manufacturers' Trust Company, of New York, held by the bank as partial security for Painter's indebtedness to the bank, which shares were delivered to the New York Trust Company of New York, for Painter's account, and receiving therefor the sum of $150,000.00, when it is charged that the market value of said stock was approximately $226,000.00.

In the indictment, Wilbur M. Baldwin is charged with being an officer, to wit, president, director and member of the executive committee of said bank, and Kenyon V. Painter is charged with being an officer, to wit, director and member of the executive committee of said bank, and in each of the counts of the indictment it is charged that the transactions mentioned were had with intent to injure or defraud the bank, and the misapplication and abstraction are charged to have been unlawfully and wilfully done.

The Union Trust Company of Cleveland, the bank involved in this indictment, was a member bank of the Federal Reserve System at and for a long time prior to the dates involved in the indictment.

Shortly after the return of this indictment both Baldwin and Painter filed their pleas in abatement, thereto, alleging as their ground therefor the fact not made apparent in the indictment, that The Union Trust Company was at the times charged, a member bank of the Federal Reserve System, which fact was admitted by the State, and that since the same acts were made offences and were cognizable under and by the federal law, if committed by officers of a member bank of the Federal Reserve System, the federal courts had exclusive jurisdiction. These pleas in abatement were overruled some time before trial, and at the trial were amended so as to state with more definiteness and certainy that by virtue of both the Constitution and the statutes of the United States, the state courts were without jurisdiction to return or try this indictment. Thus amended, the trial court again overruled these pleas, and, after a finding of guilt as to both defendants on all four counts

of the indictment, the same question of the jurisdiction of the state courts were raised by motions in arrest of judgment, duly filed which were also overruled.

The rulings of the court on these pleas and motions are assigned as errors in the petition in error and as these assignments of error go to the jurisdiction of the trial court, they will be first considered.

The pertinent part of §710-172 GC, on which this indictment is based, provides:

"Whoever being an officer, employee, agent or director of a bank, embezzles, abstracts or wilfully misapplies any of the money, funds, credits or property of such bank, whether owned by it or held in trust, * * * with intent to defraud or injure the bank or another person or corporation * * * shall be fined not more than ten thousand dollars, or imprisoned in the penitentiary not more than thirty years, or both."

U. S. Code, Title XII, §592, (Revised Statutes §5029) as in effect at times the offences are charged to have been committed, provided as follows:

"Any officer, director, agent or employe of any Federal Reserve Bank, or of any member bank as defined in §§221 to 225 of this Title, who embezzles, abstracts, or wilfully misapplies any of the moneys, funds or credits of such Federal Reserve Bank or member bank, * * * with intent in any case to injure or defraud such Federal Reserve Bank or member bank, or any other company body politic or corporate or any individual person * * * and every person who with like intent, aids or abets any officer, director, agent, employee or receiver in any violation of this section, shall be guilty of a misdemeanor, and upon conviction thereof in any district court of the United States shall be fined not more than five thousand dollars, or shall be imprisoned for not more than five years, or both, in the discretion of the court."

U. S. Code, Title XXVIII, §371, provides as follows:
"The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states.

First. Of all crimes and offenses cognizable under the authority of the United States."

It is under the above sections of the United States Code, and by virtue of the pro-

visions of the Constitution of the United States, Article VI, Paragraph 2, that the defendants claim that the state court had no jurisdiction to try them under this indictment.

U. S. Constitution, Article VI, paragraph 2, provides as follows:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, * * * shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

The following parts of sections of the United States Code and of the General Code of Ohio, are also pertinent to a consideration of the questions raised by the ruling of the trial court:

U. S. Code, Title XII, §321:

"Any bank * * organized under the general laws of any state * * *, desiring to become a member of the Federal Reserve System may make application to the Federal Reserve Board, under such rules and regulations as it may prescribe for the right to subscribe to the stock of the Federal Reserve Bank organized within the district in which the applying bank is located. * * * The Federal Reserve Board, subject to such conditions as it may prescribe, may permit the applying bank to become a stockholder of such Federal reserve bank."

U. S. Code, Title XII, §324 (R. S. 5209):—
"All banks admitted to membership under authority of §§321 and 331, inclusive, of this title shall be required to comply with the reserve and capital requirements of this chapter * * *. Such banks and the officers, agents and employees thereof shall also be subject to the provisions of and to the penalties prescribed by §592 of this title, and shall be required to make reports of condition and of the payment of dividends to the Federal Reserve Bank of which they become a member."

U. S. Code, Title XII, §330:
"Banks becoming members of the Federal Reserve System under authority of this section shall be subject to the provisions of this section and to those of this chapter which relate specifically to member banks, but shall not be subject to examination under the provisions of §§481 and 482 of this title. Subject to the provisions of this chapter and to the requirements of the board made pursuant thereto, any bank becoming a member of the Federal Reserve system shall retain its full charter and statutory rights as a state bank or trust company, and may continue to exercise all corporate powers granted to it by the state in which it was created, and shall be entitled to all the privileges of member banks. * * * *"

Sec 710-5 GC:
"Every bank, in addition to the powers, rights and privileges, possessed by it under the laws of Ohio shall have the power and right to become a member bank under the Federal Reserve Act upon the terms and conditions set forth in said Federal reserve act, or hereafter provided by law. Every bank which becomes a member bank shall have the right and power to do everything required of or granted by said Federal Reserve Act to member banks which are organized under state laws; * * *. And such bank or trust company shall continue to be subject to the supervision and examinations required by the laws of this state. * * *"

Upon the rulings of the trial court and under the provisions of law hereinbefore mentioned, the following questions arise:

First. Are the acts charged as offenses in the indictment cognizable as offenses under the provisions of Title XII, §592 of the United States Code (R. S. 5209), above mentioned?

Second. Do the courts of the United States have jurisdiction of the offenses charged to the exclusion of the state courts?

1. The Federal Government may use corporations organized under the laws of a state, as instrumentalities for the exercise of powers conferred on it by the Constitution. Lattinette v City of St. Louis 201 Federal 676, 120 C. C. A. 638; Cherokee Nation v Kansas Railroad Co., 135 U. S. 641, 10 Supreme Court Reporter, 965, 34 Law Edition 295; California v Pacific R. R. Co. 127 U. S. 1, 8 Supreme Court Reporter 1073, 32 Law Edition 150; Clallan County v United States, 263 U. S. 341, 44 Supreme Court Reporter 121, 68 Law Edition 329. It may also make frauds that impair their efficiency, crimes. United States v Walter, 263 U. S. 15.

The provision of the Federal Reserve Act permitting state banks to become members of the Federal reserve system, is within the powers of Congress under the Constitution; and the provisions of the

Federal Reserve Act making member banks of the Federal Reserve System and their officers, agents and employees subject to the provisions of Revised Statutes §5209, as applied to state banks, deals only with their relation to the Federal Reserve system, and is not unconstitutional as affecting the powers of the states over such banks. Hiett v United States, 4 Federal Reporter, Second Series, page 374, certorari denied, 45 Supreme Court, 638. See also, Westfall v United States, 274 U. S. 256, 47 Supreme Court Reporter 629.

The provisions of the Federal Reserve Act and said section being constitutional, our inquiry under the first question is narrowed to a consideration as to whether the offenses charged in the four counts of the indictment are offenses which may be prosecuted under the provisions of said Section 5209 U. S. Revised Statutes.

In the case of U. S. v Smith (District Court, Kentucky, 1907) 152 Federal 542, it was held that under the provisions of §5209 Revised Statutes (Title XII, §592 U. S. Code) the word "moneys" refers to the currency or circulating medium of the country, the word "funds" refers to government, state, county, municipal or other bonds, and to other forms of obligations and securities in which investments may be made; and the word "credits" refers to notes and bills payable to the bank, and to other forms of direct promises to pay money to it.

The offenses charged in the second, third and fourth counts of the indictment of the misapplication and abstraction of shares of stock held by the bank as partial security for Painter's indebtedness to the bank, under the above definition of "funds" are clearly within the provisions of Title XII, §592 U. S. Code (Revised Stat. §5209) penalizing any officer or director of any member bank who abstracts or wilfully misapplies any of the funds of such member bank with intent to injure or defraud such member bank, but it is contended by the State that the offense charged in the first count of the indictment is not penalized under the provisions of said section, as it is asserted the misapplication of real estate is charged, which, it is contended, is neither money, funds nor credits within the meaning of said section.

It will be noted, however, that the word "funds" under the definition above quoted, includes, in addition to bonds, "other forms of obligations and securities in which investments may be made."

The offense charged in the first count of the indictment is not misapplication of real estate but the misapplication of the title to real estate held in trust by the bank as security for the payment of a debt. The right of the bank to the real estate under the deed of trust was an equitable right of the same character it would have had if it had held a mortgage on the real estate to secure the payment of the indebtedness. Mortgages and equitable titles under deeds of trust are universally recognized as proper investment of bank funds. The title of the bank to the real estate under the trust deed to secure Painter's indebtedness to it was therefore a security constituting "funds" of the bank, within the meaning of Title XII, §592, U. S. Code.

We therefore hold that each and all of the offenses charged in the indebtedness are offenses coming within the provisions of and penalized by Title XII, §592, U. S. Code.

2. We will next consider whether the jurisdiction vested in the courts of the United States of the offenses charged in the indictment is exclusive of the courts of the State.

Under the provisions of Article VI, paragraph 2 of the United States Constitution hereinbefore quoted, the constitution and the laws of the United States which shall be made in pursuance thereof shall be the supreme law of the land.

In Kent's Commentaries, 13th Edition, Volume 1, page 400, following a discussion of the concurrent jurisdiction of the state tribunals with the courts of the United States in judicial matters, in which the above mentioned constitutional provision is considered, the conclusion is reached that in judicial matters the concurrent jurisdiction of the state tribunals depends altogether upon the pleasure of Congress, and may be revoked and extinguished whenever they think proper, in every case in which the subject matter can constitutionally be made cognizable in the federal courts; and, that without express provision to the contrary the state courts will retain a concurrent jurisdiction in all cases where they had jurisdiction originally over the subject matter.

In 16 C. J. at page 62, in discussing the same question, it is said:

"The constitutional power of congress to enact legislation to define crimes and provide for their punishment implies the power to enact that such legislation shall be

exclusive of the statutes of the states, and if it does so expressly or impliedly the states cannot punish such acts as offenses against the state. Where this is not done, either expressly or by necessary implication, the statute of the state is not superceded by the federal statute, and the same act may be punished as an offense against the United States and also as an offense against the state."

Provisions of the United States statutes similar to the provisions of §371, Title 28, U. S. Code, hereinbefore quoted, defining the jurisdiction of United States courts, have been in effect substantially in the same form as at the present time but with modifications appropriate for the changes in and re-organizations of the courts since 1789.

In Kent's Commentaries, 13th Edition, Volume 1, at pages 398 and 399, in discussing the provisions of the judiciary act of 1789, similar to the provisions of said §371, Title 28 U. S. Code, it is said:

"The Judiciary Act grants exclusive jurisdiction to the circuit courts of all crimes and offenses cognizable under the authority of the United States, except where the laws of the United States should otherwise provide; and this accounts for the proviso in the act of 24th of February, 1807, c. 75, and in the act of 10th of April, 1816, c. 44, concerning the forgery of the notes of the Bank of the United States, declaring that nothing in that act contained should be construed to deprive the courts of the individual states of jurisdiction under the laws of the several states, over offenses made punishable by that act. There is a similar proviso in the act of 21st of April, 1806, c. 49, concerning the counterfeiters of the current coin of the United States. Without these provisos the state courts could not have exercised concurrent jurisdiction over these offenses, consistently with the Judiciary Act of 1789. But these saving clauses restored the concurrent jurisdiction of the state courts, so far as, under the state's authority, it could be exercised by them. There are many other acts of Congress which permit jurisdiction over offences therein described, to be exercised by state magistrates and courts. This was necessary; because the concurrent jurisdiction of the state courts over all offenses was taken away, and that jurisdiction was vested exclusively in the national courts by the Judiciary Act, and it required another act to restore it. The state

courts could exercise no jurisdiction whatever over crimes and offenses against the United States, unless where, in particular cases, the laws had otherwise provided; and whenever such provision was made, the claim of exclusive jurisdiction in the particular cases was withdrawn, and the concurrent jurisdiction of the state courts, so instanti, restored, not by way of grant from the national government, but by the removal of a disability before imposed upon the state tribunals."

The foregoing conclusions as to the power of Congress to vest exclusive jurisdiction in the United States courts of all crimes and offenses cognizable under the authority of the United States and as to the effect of statutory provisions similar to the provisions of §371, Title 28, U. S. Code, are sustained by some of the earlier decisions of the Supreme Court of the United States as well as by many decisions of inferior federal courts and state courts. Note 38, 16 C. J. page 62. These conclusions have also apparently been concurred in by Congress through its enacting from time to time since the adoption of the Judicial Act of 1889, up to the present time, of certain penal laws in which exceptions to the exclusive jurisdiction conferred on the United States courts by the provisions of said §371 and its predecessor sections, are expressly provided.

It is established that Congress has the right under certain circumstances, by giving its consent, to open the door to states to enact legislation which otherwise would be inhibited. Peters Brewing Co. v Cranshaw, 198 U. S. 17, 25 Supreme Court Reporter, 552. 8 R.C.L. 143. And applying the same reasoning to the rights of states under the Constitution, it would appear that a state may by legislation consent to the United States exercising exclusive jurisdiction over crimes and offenses committed by officers, employees and agents of banking corporations created under state laws which become instrumentalities for the exercise of a constitutional power by Congress. Hopkins Federal Savings & Loan Association et v Cleary et, 56 Supreme Court Reporter, 235, Supreme Court Advance Sheets, December 15, 1935.

And in the absence of authoritative holding to the contrary, we would be inclined to the opinion that it was the legislative intent of Congress to reserve exclusive jurisdiction in the United States courts over the offenses defined in §592, Title 12, U. S. Code in which no exception to the provi-

sions of §371, Title 28, U. S. Code, relating to the exclusive jurisdiction of the United States courts is made, which is illustrated and confirmed by its enactment under date of May 18, 1934, of §§588a, 588b, 588c, 588d, Title 12, U. S. Code, penalizing the robbery of any member of the Federal Reserve System, any bank, banking association, trust company, savings bank or other banking institution organized or operating under the laws of the United States, in which it is expressly provided that jurisdiction over any offense defined by §§588b and 588c shall not be reserved exclusively to the Congress of the United States; and that such jurisdiction as the state might have been entitled to exercise over banks organized under the laws of the state which become members of the Federal Reserve System, for offenses cognizable under the provisions of U. S. Code, Title 12, §592, have been revoked and extinguished by the provisions of §371, Title 28, U. S. Code, vesting exclusive jurisdiction in the courts of the United States over the offenses defined in said §592; and that the State of Ohio through enactment of §710-5 GC, granting the right and power to banks organized under the laws of the state to become member banks under the Federal Reserve Act upon the terms and condition set forth in the Federal Reserve Act or hereafter provided by law has expressly relinquished its jurisdiction to penalize under the provisions of §710-172 GC, officers, employees, agents or directors of such bank committing acts constituting offenses which come within the purview of §592, Title 12, U. S. Code, although it has retained such jurisdiction as it had originally to define and punish acts which are not offenses under said section.

However, the United States Supreme Court, in the case of Herbert et v State of Louisiana, 272 U. S. 312, 47 Supreme Court Reporter, 103, a case in which the question was directly raised and directly determined, held: "The provisions of §256 of the Federal Judicial Act (§371, Title 28, U. S. Code) has no bearing on the authority of a state court to entertain an accusation for an offense against a state law. That provision relates to offenses 'cognizable under the authority of the United States.' Only offenses against the laws of the United States are cognizable under its authority. Those against the state laws are cognizable only under authority of the state. And this is true whether the same act is an offense against both the law of the United States and a law of the state."

This holding is supported by statements in the head notes and opinions in the case of Hiett v United States, 4 Federal, Second, 374, and Westfall v United States, 274 U. S. 256, and is followed in the case of the People of the State of Michigan, plaintiff and appellant, v Herbert R. Wilkin and James L. Walsh, defendants and appellees, in the Supreme Court of Michigan, decided September 2, 1936.

Whether a state statute shall be construed one way or another is a state question the final decision of which rests with the courts of the state, and where the Supreme Court of the state has decided such question its conclusion will be accepted by the federal courts as if written into the statute itself. Herbert et v State of Louisiana, supra. And on a parity of reasoning, whether a United States statute shall be construed one way or another is a federal question, the final decision of which rests with the courts of the United States, and where the Supreme Court of the United States has decided such question, its conclusion will be accepted by the state courts as if written into the statute.

Under the foregoing rule, as the decision in the Herbert case, above mentioned, is directly in point, we are constrained to follow it and therefore hold that the jurisdiction vested in the courts of the United States, of the offenses charged in the indictment, is not by reason of the provisions of §371, Title 28, U. S. Code, exclusive of the courts of this state over offenses against the laws of this state based on the same acts, and that the plea in abatement, the amended pleas in abatement and the motion in arrest of judgment were properly overruled.

We will therefore proceed to consider the other errors assigned in the petition in error and pointed out in the brief, to-wit:

(1) The evidence does not justify a finding of guilty as to either defendant on any count of this indictment.

(a) The court disregarded the law as to proof of guilty intent.

(b) The court disregarded the law as to the necessity of indulging every hypothesis of innocence.

(2) Painter cannot be convicted as an aider and abetter because not so charged in the indictment, nor as a principal because nothing was done by him in his official capacity.

These assignments of error will be considered in the order mentioned.

(1) The specification that the evidence does not justify a finding of guilt as to either defendant on any count of this indictment is based on the contention that the finding of the court on the issue of intent to defraud is not sustained by sufficient evidence there being no dispute as to the other facts charged in the indictment.

Before considering the evidence on the various counts in the indictment we deem it advisable to set forth certain rules of law applicable to the indictment and proof on this issue, as follows:

a. There is no statute in terms requiring a bank or its officers to have loans secured by collateral security or forbidding the bank or its officers, when loans are secured by collateral security, from either releasing or substituting collateral security on loans made; and that the defendant Baldwin as president of the bank, having supervision over the loans made by the bank to the defendant Painter, was not required by law to take collateral security for such loans and was not prohibited by law from releasing collateral security on loans after the same had been taken; and that under the provisions of §710-172, GC, the release by Baldwin acting in his said official capacity, of collateral security held by the bank on loans made by the bank to Painter, could only become an offense in case such release was made with intent to defraud the bank.

b. Where an act, in itself indifferent, if done with a particular intent becomes criminal; there the intent must be proved and found.

Rex v Woodfall, 5 Burr. 2661, 2667, 98 Reprint 398 (per Lord Mansfield).

16 C. J. 81, note 53.

State v Kortgaard, 62 Minn. 7, 16, 64 Northwestern, 51.

c. Where a statute makes an offense to consist of an act coupled with a specific intent, the doing of the act raises no presumption that the act was done with the specific intent; but such intent, as well as the act must be found by a jury as a matter of fact before a conviction can legitimately result. 20 C. J. 435, note 64. State v Gibson, 111 Missouri, 92, 19 Southwestern, 980.

d. Where a transaction on its face is as consistent with honesty as with fraud, it will be presumed that the intent was lawful. State v Gintzner, 134 Missouri, 512, 36 Southwestern, 39. Clark v State, 12 Ohio, 483.

Without going into details, the evidence on the first count of the indictment tends to prove that Baldwin, president, director and a member of the executive committee of The Union Trust Company, having supervision over loans made by the company to the defendant Painter who was a director and a member of the executive committee of said bank, caused to be conveyed to the wife of Painter, certain real estate the title to which had been conveyed by Painter to the bank under a trust agreement in writing as collateral security for certain indebtedness owing to the bank by Painter, neither the amount of the indebtedness being reduced nor other collateral substituted at the time of the conveyance by the bank to the wife of Painter. Sometime prior to the execution of the trust agreement and in connection with negotiations leading up to the same, a list of real estate was given by Painter to the bank which did not include descriptions of the real estate subsequently conveyed by the bank to Painter's wife. The trust agreement was prepared by an officer of the bank under the direction of Baldwin and was executed by Baldwin and Painter on the eve of Baldwin's departure on a trip to Europe. The agreement was signed by Painter and Baldwin at Baldwin's office in the bank in the presence of one person who testified as a witness in the case. Both Baldwin and Painter testified that neither of them had read the agreement at the time it was signed, and the person who was present and testified as a witness said that neither of them had read the agreement in his presence. The evidence of both Baldwin and Painter tends to prove that the parcel of real estate afterward conveyed to Painter's wife by the bank was included in the real estate conveyed by Painter to the bank under the trust agreement, by mutual mistake and that the conveyance made by the bank to Painter's wife was made at the request of Painter to rectify the mistake. The bank records show the release of the real estate as collateral, and there is no evidence of any attempt on the part of either Baldwin or Painter to conceal the details of the transaction other than evidence to the effect that at a time several years subsequent to the transacion Baldwin had said to certain persons that he had not released the real estate and did not recollect that the real estate had been released.

There is also evidence tending to prove that prior to the execution of the trust

agreement an appraisal was made of Painter's real estate under the direction of an officer of the bank and that this appraisal showed the real estate to be of much less value than the value placed upon the same by Painter in his statement to the bank and in the trust agreement. Baldwin denies knowledge of this appraisal and there is no direct evidence that the appraisal was brought to his attention. There is in evidence, however, a letter written by one of the officers of the bank to a department of the bank in which he states that he is including certain data with reference to loans made by the bank to Painter, including the appraisal referred to, and other papers handed to him by Baldwin. The writer of this letter was deceased at the time of the trial so his testimony was not available.

The burden was on the state to prove the intent to defraud, beyond a reasonable doubt. The act of releasing the collateral, in and of itself raised no presumption that the act was done with intent to defraud.

Under the weight of the evidence in the case, the transaction covered by the first count in the indictment is ██ as consistent with honesty as with fraud and the defendants are entitled to the benefit of the presumption that their intent was lawful. The finding against both defendants on this count of the indictment is therefore not sustained by sufficient evidence and they are entitled to have the judgment on this count reversed for this reason and the cause remanded for a new trial on this count.

As to the second and third counts of the indictment, which involve the same transaction, there is evidence tending to prove that certain miscellaneous shares of stock held by the bank as partial security for Painter's indebtedness to the bank were released to Painter without payment on the loan and with the substitution of securities of less value in place thereof, and that a part of said shares of stock were used as additional security for a loan of Painter at The Chemical Bank & Trust Company of New York and the balance was delivered to Painter personally.

Painter at the time of these transactions owed large sums of money in addition to the amounts for which he was indebted to The Union Trust Company, to other banks and to an insurance company, and some of his obligations had not been paid when due, and he had no securities outside of the securities held by The Union Trust Company and his other creditors, of the type which would be acceptable to the Chemical Bank and Trust Company as additional collateral security on his loan from that company, and that previous to the release of the securities to him by The Union Trust Company, the Chemical Bank had requested additional security on its loan, and had advised him that if it was not furnished it would be forced to dispose of the securities then deposited as collateral security on its loan to him.

Within two or three days after the delivery of the shares of stock held as security to Painter personally, Painter deposited shares of such stock of the market value of about $116,000.00 with certain business associates in New York as collateral security on an option agreement entered into between Painter and such associates granting Painter the option to purchase a forty-nine per cent interest in a half interest in certain patent rights on which such associates then had an option to purchase. That Painter had indirectly furnished a considerable part of the consideration for the acquirement of the option by his associates and that the price stipulated in the option granted by Painter's associates to him was $200,000.00 for forty-nine per cent of the one half interest which half interest under their option they could acquire for the sum of $70,000.00. That the option entered into between Painter and his associates provided that the stock mentioned was deposited to secure the payment of the option price by Painter upon the exercise of the option. The option was never exercised and shortly after its execution, at the direction and request of Painter certain of such stock was sold and the proceeds deposited in a bank account opened by his associates at a New York bank, and through various transactions the proceeds of all such stock as well as other stock released to Painter individually was transferred either to Painter's wife or into a trust for her benefit.

The subject matter and terms of the option agreement entered into between Painter and his associates and the circumstances surrounding the execution of the same are so unusual as to permit an inference of bad faith on the part of Painter and from this evidence and the other evidence as to Painter's indebtedness and his inability to meet current obligations and the short length of time elapsing between the securing of the release of the collateral security by Painter and the execution of the option and the deposit of the stock as collateral security for the payment of the purchase price when

Painter exercised the option, and the non-exercise of the option, and the disposal of the stock and its proceeds in the manner in which they were disposed of, the trial court was justified in inferring as against Painter that at the time the securities were released to him by the bank that Painter's financial condition was such to his own knowledge that the bank through the release of the securities would probably suffer a loss, and the securing by Painter of the release of these securities was for the purpose of defrauding the bank and that in furtherance of this purpose the option agreement was made, nor for the purpose it purported to be made, but for the purpose of placing such securities beyond the reach of the bank for the satisfaction of its indebtedness. The evidence insofar as Painter is concerned is therefore ▮▮▮▮ sufficient to sustain the finding of the trial court of proof beyond a reasonable doubt of the intent of Painter to defraud the trust company as charged in the second and third counts of the indictment, and the finding and judgment on these counts as to Painter will be affirmed.

As to Baldwin the evidence tends to prove that at the time of the release of the collateral he had knowledge that Painter owed large sums of money to banks and to an insurance company in addition to amounts owed by him to The Union Trust Company, and that some of Painter's obligations had not been paid when due and that Painter had no securities outside of the securities held by The Union Trust Company and his other creditors as security for loans which would be acceptable to The Chemical Bank & Trust Company as additional collateral security on Painter's loan from that company, and that The Chemical Bank had requested additional security on its loan and had advised Painter that if the loan was not paid or additional security furnished it would be forced to dispose of the securities then deposited as collateral security on the Chemical Bank's loan to Painter, but there is no evidence of his having knowledge of any additional facts tending to show that Painter's financial condition was such at the time of the release of the securities that such release would probably result in a loss to the trust company; and there is no evidence tending to prove knowledge on the part of Baldwin of Painter's intention to enter into such option agreement or of Painter's intention to dispose of or his disposal of the stocks or proceeds thereof deposited as collateral

security on the option agreement in the manner in which they were disposed of; and there is no evidence tending to prove that Baldwin in any way profited by the transaction; and there is no evidence of the degree required in criminal cases, tending to prove that Baldwin in releasing such collateral security was moved by considerations other than the welfare of the trust company. The release of the collateral was regularly entered upon the books of the trust company and there is no evidence of any attempt of concealment of the transaction on the part of Baldwin. And there is no evidence of any other facts or circumstances in connection with the transaction tending to prove by the degree of proof required in criminal cases, an intent on Baldwin's part to defraud the bank as charged in the second and third counts of the indictment.

The proof of Baldwin's knowledge of the items of Painter's indebtedness mentioned and that some of Painter's obligations had not been paid when due, and that Painter had no securities outside of the pledged securities acceptable to the Chemical Bank, did not constitute proof beyond a reasonable doubt that Baldwin had knowledge that Painter was insolvent at the time the securities were released or that the trust company would probably suffer a loss through the release of the securities. Under the law applicable to proof of intent to defraud under the indictment, the act of releasing the securities did not raise a presumption that it was done with intent to defraud, and considering all the evidence as to Baldwin, and the absence of evidence tending to prove concealment or participation in proceeds which is ordinarily present in cases of misapplication or abstraction, it is insufficient in degree to sustain the finding of the trial court against Baldwin on the second and third counts of ▮▮▮▮ the indictment, and for this reason the finding and judgment on these counts as against Baldwin will be reversed as not being sustained by sufficient evidence and the cause as to these counts against Baldwin remanded for new trial and further proceedings according to law.

As to the fourth count. The evidence tends to prove that Baldwin, acting in his official capacity, released collateral security of the market value of approximately $220,000.00 and that this collateral security was deposited as security on a loan of Painter from The New York Trust Company of New York, the New York Trust

Company in turn paying $150,000.00 in cash to The Union Trust Company which was applied on Painter's loan to the trust company. Immediately following the consummation of this transaction Baldwin caused to be forwarded to Painter a form of assignment of Painter's equity in the stock deposited as collateral security with the New York bank, requesting Painter to execute the assignment for use as collateral security on Painter's loan from The Union Trust Company. Painter failed to execute the assignment. Through this transaction the bank lost as collateral security on its loan, whatever equity Painter may have had in the stocks released for deposit as collateral security on loan to Painter by The New York Trust Company.

Insofar as Baldwin is concerned, the evidence on this count is insufficient to prove an intent to defraud the bank as he apparently acted in good faith in endeavoring to preserve Painter's equity in the stock held by The ·New York Trust Company as collateral security on the indebtedness to The Union Trust Company, and on this count the finding and judgment of the court as to Baldwin should be reversed as not being sustained by sufficient evidence. On the other hand, the failure of Painter to assign his equity in the stock to the bank, considered in connection with the other evidence in the case and particularly the evidence tending to prove insolvency and knowledge of insolvency at a time immediately prior to release, tends to prove an intent on his part to defraud the bank, and is sufficient to sustain the finding of the trial court against him on this count. The finding and judgment as to Painter on this count will therefore be affirmed.

1. (a) (b). The assignments that the court disregarded the law as to proof of guilty intent and disregarded the law as to the necessity of indulging every hypothesis of innocence, will be considered together as they in effect involve the same question.

It is contended by the defendants that the trial court in its opinion finding the defendants guilty, made some statements regarding the law which were incorrect, as applied to the facts of the case. The opinion of the court is not a part of the record in this case and not being a part of the record is not a subject of consideration in this error proceeding. This contention of the defendants is therefore without basis. As the record stands, the question before this court is whether the findings of the trial court are against the weight of the evidence, which we have already decided.

2. It is contended by the defendant Painter that he cannot be convicted as an aider and abettor because not so charged in the indictment, nor as principal because nothing was done by him in his official capacity.

Sec 12380, GC, authorizes the prosecution as well as the punishment of aiders and abettors as principal offenders. Hence, one indicted as a principal may be convicted on proof that he was an aider and abettor. **Hanoff v State, 37 Oh St 178.**

In cases where defendants did not possess the legal or physical capacity to commit the crime charged, as principals, it has been held that they must be charged as aiders and abettors. **Searles v State, 6 O. C.C. 331.** The defendant Painter had both the legal and physical capacity to commit the offense as a principal and consequently comes within the general rule above mentioned and not within the exception last mentioned. So that on the charge against him as principal he was subject to conviction as an aider and abettor.

From reading the statute on which the indictment is based, it will be noticed that there is nothing in the statute indicating that the penalized offenses must be committed by a director in his official capacity. It was the legislative intent in the enactment of this statute to penalize the acts of persons coming within the classes mentioned irrespective of whether the offenses were committed by them while acting within their official capacity, and to provide different penalties for those officially connected with the bank and those not officially connected with the bank who commit offenses against the property of the bank. The official status of the person plus the commission of the penalized act, constitutes the offense, so that under the terms of the act Painter could be convicted as a principal although the acts done by him may or may not have been done in his offiical capacity. These contentions are therefore without merit.

For the reasons mentioned, the finding and judgment against the defendant Baldwin on all four counts of the indictment will be reversed as being against the weight of the evidence and the cause will be remanded as to the defendant Baldwin for a new trial and further proceedings according to law. As to the defendant Painter

the finding and judgment on the first count of the indictment will be reversed as being against the weight of the evidence and as to this count in the indictment as to Painter the case will be remanded for a new trial, and on the other three remaining counts of the indictment the finding and judgment as to Painter will be affirmed.

KLINGER, GUERNSEY and CROW, JJ, concur.