## LATINETTE v. CITY OF ST. LOUIS.

(Circuit Court of Appeals, Seventh Circuit. November 21, 1912.)

No. 1,882.

1. EMINENT DOMAIN (§ 9*)—POWER OF UNITED STATES—DELEGATION TO MUNICIPALITY—ST. LOUIS BRIDGE.

Act June 25, 1906, c. 3539, 34 Stat. 461, authorizing the city of St. Louis, Mo., to construct, maintain, and operate a bridge across the Mississippi river and approaches thereto, and for that purpose "to receive, purchase and also acquire by lawful appropriation and condemnation in the states of Illinois and Missouri, upon making proper compensation, to be ascertained according to the laws of the state within which the same is located, real and personal property and rights of property," conferred on the city the right to maintain proceedings in a federal court in Illinois for the condemnation of land in that state for approaches, although it had no authority to maintain such proceeding under the laws of Illinois.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 27–34; Dec. Dig. § 9.*]

2. EMINENT DOMAIN (§ 9*)—POWER OF UNITED STATES—DELEGATION TO MUNICIPALITY—INTERSTATE BRIDGE.

The United States has power to construct, or to authorize the construction of, an interstate bridge across a navigable stream to serve as a postroad and a way for interstate commerce, and to that end may confer power on a state municipal corporation, authorized to construct and maintain such a bridge, to condemn land for approaches thereto in another state, independently of the laws of such state.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 27–34; Dec. Dig. § 9.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Eastern District of Illinois; Francis M. Wright, Judge.

Proceeding by the City of St. Louis against Eugene Latinette, Sr., to condemn land. Judgment for petitioner, and defendant brings error. Affirmed.

P. W. Haberman and G. L. Stern, both of St. Louis, Mo., Daniel Hogan, Jr., of Danville, Ill., and Henry L. Stern, of Chicago, Ill., for plaintiff in error.

Lambert E. Walther and Maurice V. Joyce, both of E. St. Louis, Ill., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge. By the judgment to which this writ of error is addressed, St. Louis, a municipal corporation of Missouri, acquired by condemnation for the eastern approach to a bridge across the Mississippi certain of Latinette's lands situate in Illinois.

Questions of law arising from the admitted facts, stated in the city's petition, concern, first, the jurisdiction of the United States Circuit Court for the Eastern District of Illinois, and, second, the right of the Missouri municipality to appropriate lands in Illinois.

In the petition proper averments were made respecting the organization and existence of the city as a corporation under the laws of Missouri and the citizenship of Latinette in Illinois and his residency in the Eastern District. Besides jurisdiction by reason of diversity of citizenship it will appear in the consideration of the merits that the decision depends wholly upon a question of right under the Constitution and laws of the United States.

It is conceded that St. Louis was not authorized by the laws of Illinois to maintain this condemnation proceeding. A federal grant of authority is alone counted upon in the petition. That Missouri by her statutes and decisions (Haeussler v. St. Louis, 205 Mo. 656, 103 S. W. 1034) had authorized St. Louis to build and maintain the bridge in question, together with the necessary approaches, and for that purpose to buy or appropriate lands in Missouri, to buy lands in Illinois, and to accept a federal grant of right to appropriate lands in Illinois, seems to be settled beyond controversy. There remain an examination of the alleged federal grant, and an inquiry into the power of the federal government to make a grant of that character.

[1] By the general bridge act (Act March 23, 1906, c. 1130, 34 Stat. 84 [U. S. Comp. St. Supp. 1907, p. 1058]) Congress provided that "when, hereafter, authority is granted by Congress to any persons to construct and maintain a bridge across or over any of the navigable waters of the United States," the bridge should not be built except in accordance with plans and specifications approved by the Secretary of War and the chief of engineers; that the bridge when built should be recognized as a post route; that the United States should have the right to construct and maintain, without charge, telegraph and telephone lines upon the bridge and its approaches; and that equal priv-

ileges in the use of the bridge and its approaches should be granted by the owner to all railroad, telegraph, and telephone companies.

Congress on June 25, 1906 (34 Stat. at L. p. 461, c. 3539), enacted:

"Section 1. That the city of St. Louis, a corporation organized under the laws of the state of Missouri, be, and is hereby, authorized to construct, maintain, and operate a railroad, wagon, and foot-passenger bridge, and approaches thereto, across the Mississippi river at St. Louis, Missouri, in accordance with the provisions of the act entitled 'An act to regulate the construction of bridges over navigable waters,' approved March 23, 1906.

"Sec. 2. That for the purpose of carrying into effect the objects of this act, the city of St. Louis may receive, purchase, and also acquire by lawful appropriation and condemnation in the states of Illinois and Missouri, upon making proper compensation, to be ascertained according to the laws of the state within which the same is located, real and personal property and rights of property, and may make any and every use of the same necessary and proper for the construction, maintenance, and operation of said bridge and approaches consistent with the laws of the United States and of said states respectively."

Only consent was given by section 1 of this latter act to build the bridge in the manner and on the conditions expressed in the general bridge statute. Authority to exercise the sovereign power of appropriation, if given at all, was conferred in section 2. Appellant's contention is that the words "according to the laws of the state" show that Congress meant that St. Louis should not have power to condemn except by virtue of state law, and that, inasmuch as Illinois refuses to give St. Louis the power, the judgment must be reversed. But, looking to the construction of the sentence, it seems clear to us that only the "compensation" is "to be ascertained according to the laws of the state." Furthermore, while Congress might tell its agent to go to the state law for the rules of practice, it could not constitutionally effect anything by telling its agent to go to the state law for power to condemn land for a national purpose. Condemnation is an attribute of sovereignty. It must be exercised directly by the sovereign or through an agency appointed by the sovereign. Neither the power nor the selection of agents can be transferred to another. States have the power only for state purposes; the nation, only for national purposes. So, the power to condemn mentioned in section 2 must be referred to the national power. And finally, Congress in framing section 2 used a formula of expression which had already been judicially construed. In Luxton v. North River Bridge Co., 153 U. S. 525, 14 Sup. Ct. 891, 38 L. Ed. 808, the act provided that the bridge company might "acquire by lawful appropriation and condemnation, upon making proper compensation therefor, to be ascertained according to the laws of the state within which the same is located, real and personal property and rights of property"; and these words, the same as in the case at bar, were held to relate to the national power.

[2] That the construction and operation of the bridge across the Mississippi, so that the bridge should not obstruct navigation of the waterway, and that the bridge and its necessary approaches might serve as a postroad and as a landway for interstate commerce, were national matters, that the nation had the right itself to build and maintain the bridge and approaches, and, for the purpose of acquiring land for the approaches, to exercise the power of eminent domain either

directly or through a corporation created by it for that end, without the consent or over the objection of the state—are propositions too well settled to warrant elaboration or debate. Kohl v. U. S., 91 U. S. 367, 23 L. Ed. 449; California v. Pacific R. Co., 127 U. S. 39, 8 Sup. Ct. 1073, 32 L. Ed. 150; Luxton v. North River Bridge Co., 153 U. S. 525, 14 Sup. Ct. 891, 38 L. Ed. 808; Wilson v. Shaw, 204 U. S. 24, 27 Sup. Ct. 233, 51 L. Ed. 351. Contention is therefore narrowed to this: That Congress could not constitutionally select appellee as the agency through which a national power should be exercised. Nothing in the Constitution forbids the selection of a state corporation as a national agent. In reason the material thing is the principal's authority, not the parentage or birthplace of the agent. And the decisions of Mr. Justice Bradley at circuit in Stockton v. B. & N. Rld. Co. (C. C.) 32 Fed. 9, and of the Supreme Court in Cherokee Nation v. Kansas Ry. Co., 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295, explicitly cover the point.

The judgment is affirmed.