## TENNESSEE GAS TRANSMISSION CO. v. THATCHER.

### Civ. A. No. 2570.

United States District Court
W. D. Louisiana, Monroe Division.

June 9, 1949.

Shotwell & Brown, Monroe, La., for plaintiff.

Theus, Grisham, Davis & Leigh, Monroe, La., for defendant.

DAWKINS, Chief Judge.

This is a proceeding for the condemnation of a 50 foot right of way for the construction of a third pipe line across the property of defendant (two, having been laid heretofore under rights of way, also 50 feet in width adjoining and comprising a strip 100 feet wide, purchased from defendant by private agreement) paralelling and adjoining its present lines. A certificate of necessity and convenience having been granted by the Federal Power Commission, and negotiations for the presently sought right of way having failed, this suit was instituted in this Court, under express provisions of a Federal statute, Title 15, U. S.C.A. § 717(f).

Defendant has moved to dismiss the action on the ground, among others, that the Act is unconstitutional, and in the alternative, asks for a bill of particulars as to the "reasons which necessitate the construction of plaintiff's proposed pipe line and the location of its proposed right of way along the particular route, which complainant has selected * * *".

Reduced to terms of substance, it is contended by defendant:

(1) Congress is without power under the Constitution to confer upon a private corporation, such as plaintiff, authority to condemn private property;

(2) The act makes no provision within itself, for ascertaining and paying of adequate compensation, thereby violating the 5th Amendment;

(3) If the demand is made under state laws this Court is without jurisdiction;

(4) The complaint fails to state facts upon which relief can be granted; and

(5) Alternatively, if the complaint is not dismissed, plaintiff should be required to furnish a bill of particulars of the matters above stated.

The motion to dismiss has been briefed separately from the merits and will be disposed of in the same way.

Motion to Dismiss

Defendant concedes that the United States Government may itself condemn private property for public purposes, without express constitutional or statutory authority, as an incident to its sovereignty, and that in proper cases it may delegate this power to persons or corporations having the status of common carriers, or engaged in the construction of highways, bridges, etc., for the common use of the public. Cherokee Nation v. Southern Kansas R. Co., 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295; Luxton v. North River Bridge Company, 153 U.S. 525, 14 S.Ct. 891, 38 L.Ed. 808; State of Missouri v. Union Electric Light and Power Company, 8 Cir., 42 F.2d 692; and Oakland Club v. South Carolina Public Service Authority, 4 Cir., 110 F.2d 84. He insists, however, that the plaintiff seeks in this case to deprive him of his property for a purely private purpose, the construction of a pipe line for the transporting and marketing of its own gas alone, without qualifying as a common carrier, which would require it to transport gas for the public generally. This is the major contention, and the points involved in grounds Nos. 2 to 5 inclusive, above, may be said to be more or less incidental. We shall therefore deal first with the constitutionality of the statutes in question.

■ (1) It is also admitted that the control of Congress over interstate commerce is plenary, within the range of expressed constitutional delegation, as well as of those powers reasonably to be implied therefrom. Proceeding from this premise, it may not be out of place to say, that it is believed no other provision of the Constitution warrants greater elasticity in its interpretation, to meet the ever expanding and increasingly complicated conditions of commerce. As has been said, interstate commerce may be compared, in dealings between the states and their citizens, to the circulation of blood in the human body, upon which the life of the nation depends. It is true that in the early stages, Congress and the courts had to deal with conditions as they then existed. At first intercourse was mainly upon the navigable waters of the country; later came the railroads, followed by hard sur-

faced highways, bridges, etc., and now the airways, underground pipelines, etc.

Can it be said that the power of eminent domain, in the control of interstate commerce, must be limited to common carriers or channels always open to the public; or does the principle apply also to situations, where, in the nature of things, the particular business or enterprise from a practical standpoint, can be carried on only by the initial agency in the state of origin, gathering or producing commodities, such as natural gas, etc. and transporting them across state lines to points of distribution to the public? In other words, does the producer of natural gas, which must be transported by pipe line, have to wait until some one else sees fit to build a line, open to the public, before he can do business with hundreds of eager customers in other states? Is it any the less public where that interest begins after crossing of state lines and the making of the commodity available to the purchasing public, than where the sellers, before transportation are to be served? Consider the case of high power lines, where the electricity is generated by a single or number of privately owned plants, propelled by steam or water power, located wholly within a single state whose operations in generating or producing the commodity, (electricity), to the point of its availability in interstate commerce involve only intra-state activities, to the extent that the Supreme Court has held their producing activities subject to local taxation as against the claim that such taxes would be a burden upon interstate commerce. Such operations by their very nature do not lend themselves to indiscriminate public use, but must be by tie-ins or other arrangements, with the individual plants. Natural gas, as well as the artificial kind, like the current of electricity, for practical purposes of service to domestic and industrial consumers, can not be transported in containers by ordinary common carrier, but must be conveyed by pipe lines constructed for the purpose. (We are not concerned in this case with the question of whether an operator, such as plaintiff, who had been authorized to exercise this power, could be compelled to purchase ratably the available gas of all producers along its line.) It

should not be overlooked that the movement of gas in pipe lines is continuous, except for limited quantities which can be stored in tanks.

While the question of the right to condemn property for the laying of such a pipe line, as involved here, has not been decided directly, the Supreme Court has held the Natural Gas Act, under which the condemnation is sought, constitutional as a proper regulation of interstate commerce. Federal Power Commission v. Natural Gas Pipe Line Co., 315 U.S. 575, 580, 62 S.Ct. 736, 86 L.Ed. 1037. Then, too, Congress in construing its constitutional power, as it has the right to do, in the first instance, has indicated its belief that the law and regulations enacted and authorized by it, fall within the ambit of its delegated power to regulate interstate commerce, and we should not treat lightly its apparently well considered exercise of its judgment. Again, the claim of unconstitutionality has less appeal, though not barred, where, as here the owner of the property, when the price was satisfactory, encumbered it with two other lines, which are to form a part of the enlarged, integrated system requiring the addition of the line now to be built. To say the least, the charge of unconstitutionality rests upon doubtful grounds, and that doubt should be resolved against the claim.

(2) As to grounds Nos. 2 and 3, it has been uniformly held that state procedure may be used in condemnation cases under Federal Laws. Oakland Club v. South Carolina Public Service Authority, 4 Cir., 110 F.2d 84 and authorities cited therein.

(3) As to point No. 4 it is plain that the complaint discloses a right of action.

(4) As to the demand for a bill of particulars the trial has answered all questions raised therein.

(5) At the beginning of the trial, attention was called to an exception of nonjoinder, in that the holder of a mortgage upon the tract of land over which the right of way is sought had not been made a party; nor was the tenant to whom the property was leased for agricultural purposes included. It appears without contra-

diction that the holder of the mortgage is one D. Y. Smith, who was called as a witness for defendant and thereby has knowledge of the suit. Neither he nor the tenant is an indispensable party, inasmuch as in the distribution of the proceeds to be paid for the right of way, either party, for his protection, may rule the holders of these interests into Court for a hearing as to what portion, if any, of the money they should receive.

■ (6) As to the claim that defendant is entitled to trial by jury, this had to be decided before the case could proceed, when it was taken up. The jury was denied. Counsel for defendant, while insisting upon the point, seemed to concede that the jurisprudence was against him and has not argued the matter in brief. Under the circumstances it is not deemed necessary to consider this question further.

### Amount of Recovery.

Plaintiff contends that this land, at the present time, has no value other than for agricultural purposes, and that once the gas line is constructed and in place, the whole area occupied by all three lines can be cultivated, and that little inconvenience will be caused to the owner or the lessee. Its witnesses fixed this value at $100 per acre for the fee, but said $50 would be fair compensation for the right of way alone.

On the other hand, witnesses for the defendant insist that this plantation property, consisting of some 1100 acres, because of its proximity to the village of Sterlington, 3 or 4 miles away, and the comparatively short distance from the city of Monroe, some 7 miles, has elements of value over and above agricultural uses. While conceding that no activity or demand for its subdivision into smaller tracts is in progress at the present time, it is argued that, because of the fact that it has an extensive border on a paved highway, as well as other gravel roads, is traversed by the main line of a railroad, telephone and gas lines, all advantages not possessed by ordinary farm lands of the same quality, the tract has a value of from $150 to $200 for the rear or remote areas, to some $500 per acre for the portion

running on the highways. This testimony, as is true in all cases, is but the opinion of the respective witnesses, based upon their experience and knowledge of values as shown by the record. No offers to either sell or buy were proven, nor was there any evidence of the sale of property in the immediate vicinity, in the manner testified about, that is, small tracts for home sites or for industrial purposes, etc. It is true that figures were given of the sale and purchase of small tracts for plant sites and housing projects in close proximity to Sterlington, where a number of industrial plants have been constructed over a period of several years, in connection with activities by the Government during the recent war, and in the handling of natural gas and its products in that portion of the Monroe field; but there is no substantial evidence that this will spread to the property of defendants within any reasonable time in the immediate future.

■ However, I am bound to conclude that the advantages over ordinary farm property, including location, available transportation facilities and utilities, do give an added value, which should be taken into consideration in the price to be paid for this right of way. It is also true that an appreciable curtailment of the uses to which an additional area would otherwise be available, in the event of growth or development of the community, will be suffered permanently, or so long as the rights of way are used for high pressure gas lines. It is conceded by the witnesses for both sides that no residential or industrial construction should be risked within range of possible explosions in these lines. The difference between them is simply one of the distance at which this danger lies, ranging from a few feet to a maximum of 1000 feet. Of course, this is a damage or impairment of adjoining property other than the 150 foot wide strip that will be occupied by the three lines running from the southwest to the northeast through the approximate center of the tract. Yet, it can not be overlooked that most of this damage has already occurred and was compensated for by prices which the plaintiff paid to the defendant for the rights of way occupied by the oth-

er two lines. The one to be constructed is the largest, 30 inches in diameter, and to some extent, increases the distance thus menaced. It is not seriously disputed that this entire space, subject ·to its use by the plaintiff for inspecting, repairing, etc, its· pipe lines, may be used for the cultivation of crops of the character normally produced in this section. ·

Giving due consideration to ·all these factors, it is my belief that an award of $150 per acre for the right of way, plus the sum of $500 for the additional impairment to adjoining lands, over and above that already paid, arising from the presence of these high pressure gas lines, would be fair and reasonable.

Proper decree should be presented.