**Transcontinental Gas Pipe Line Corp. v. Mercy Hospital of Chester**

*Allen S. Olmsted, 2nd,* and *Edward A. G. Porter,* for plaintiff.

*E. Wallace Chadwick* and *Thomas A. Curran,* for defendant.

ERVIN, P. J., August 7, 1950.—Transcontinental Gas Pipe Line Corporation has filed 11 petitions for approval of bond in eminent domain proceedings. Petitions to dismiss plaintiff's petition were filed in this and seven other cases. All the petitions raising substantially the same question, they will be disposed of in this one opinion and similar orders entered in the remaining cases.

Plaintiff's petition alleged that it was a Delaware corporation duly registered to do business under the laws of the Commonwealth of Pennsylvania; that it has been granted appropriate certificates of public convenience and necessity by the Federal Power Commission, an instrumentality of the United States of America having jurisdiction in the premises, authorizing it to construct, operate, own and maintain, among other facilities, a natural gas transmission pipe line system and appurtenant facilities from the State of Texas to the State of New York, passing through the

Commonwealth of Pennsylvania, whereby Transcontinental will be engaged, subject to the jurisdiction of the commission, in the transportation and sale of natural gas in interstate commerce for ultimate public consumption as a "natural gas company" within the meaning of the Federal Natural Gas Act of June 21, 1938, c. 556, 52 Stat. at L. 821, as amended, 15 U. S. C. §717 et seq., and that as such Transcontinental is vested with the right of eminent domain under the Act of Congress and that for its public purposes aforesaid Transcontinental is about to construct, operate, own and maintain the pipe line system in this county. The petition sets forth that Transcontinental deems it necessary and essential to take and appropriate a right-of-way easement over, across, under and through lands of defendant and by proper resolution (a copy of which was attached to the petition) has authorized the appropriation and condemnation of the right-of-way easement. The petition further alleges that the nature and intended use of the right-of-way easement is more fully described and referred to in the bond accompanying the petition (a copy of which is also attached to the petition) and that a description of the land across which the right-of-way easement will pass and an exact reproduction of the plan and survey showing the location and approximate course of the right-of-way also is incorporated and annexed to the petition. The petition alleges that Transcontinental had attempted to agree with defendant as to damages for the right-of-way easement so described but defendant refused to agree; that Transcontinental had tendered its bond to defendant, which bond was refused, and that Transcontinental gave due and timely notice in writing that the bond would be presented to this court for approval. The petition further alleges that such bond is unlimited in amount and furnishes ample security for all damages that may be sustained by rea-

son of the right-of-way easement and that the surety has been approved by this court.

Instead of filing exceptions or an answer to the petition defendant filed a motion to dismiss, raising the legal questions: (1) That the Congress of the United States has no authority under the Constitution to vest the power of eminent domain over lands in Pennsylvania or the rights of citizens of Pennsylvania in a foreign corporation and particularly a foreign corporation organized for restricted purposes and with the restricted powers of Transcontinental, and (2) even if it had such general power the present attempted exercise of such power is illegal and unconstitutional. In view of the nature of defendant's action, which is, in effect, a demurrer to plaintiff's petition, we must consider as admitted for the purpose of the argument all the facts alleged in plaintiff's petition. The practice relating to petitions for approval of bonds in eminent domain proceedings is set forth in 14 Standard Pa. Practice, 256 et seq. Where the petition sets forth a prima facie right to condemn the land described, the resolution of the board of directors is final and conclusive as to the necessity for such improvement and the only matters for consideration are the form, adequacy or sufficiency of the bond: Wilson v. Pittsburgh & Lake Erie Railroad Company, 222 Pa. 541; Schenck v. Pittsburgh et al., 364 Pa. 31. Of course, if the petition on its face shows that the corporation does not have the power of eminent domain or that the purpose set forth in the resolution is not a public purpose, the court may refuse to approve the bond: Wilson v. Pittsburgh & Lake Erie Railroad Company, 34 Pa. Superior Ct. 575; American Transfer Company's Petition, 237 Pa. 241.

In the present case the power of eminent domain granted by Congress establishes a prima facie right to condemn. It is argued that Congress has no author-

ity to vest the power of eminent domain over lands in Pennsylvania in a foreign corporation. That question has been decided by the United States Court of Appeals for the Fifth Circuit in Thatcher v. Tennessee Gas Transmission Co., 180 F. (2d) 644. It is hard to see how such a proposition can be seriously raised. For years Congress has been upheld in granting the right of eminent domain to railroads, bridge companies, etc., as a necessary power under its right to regulate interstate commerce. In California v. Central Pacific R. R. Co., 127 U. S. 1, 39, it was said:

"It cannot at the present day be doubted that congress, under the power to regulate commerce among the several states, as well as to provide for postal accommodations and military exigencies, had authority to pass these laws. The power to construct, or to authorize individuals or corporations to construct, national highways and bridges from state to state, is essential to the complete control and regulation of interstate commerce. Without authority in congress to establish and maintain such highways and bridges, it would be without authority to regulate one of the most important adjuncts of commerce. This power in former times was exerted to a very limited extent, the Cumberland or National road being the most notable instance. Its exertion was but little called for, as commerce was then mostly conducted by water, and many of our statesmen entertained doubts as to the existence of the power to establish ways of communication by land. But since, in consequence of the expansion of the country, the multiplication of its products, and the invention of railroads and locomotion by steam, land transportation has so vastly increased, a sounder consideration of the subject has prevailed and led to the conclusion that congress has plenary power over the whole subject. Of course the authority of congress over the territories of the United States, and its power

to grant franchises exercisable therein, are, and ever have been, undoubted. But the wider power was very freely exercised, and much to the general satisfaction, in the creation of the vast system of railroads connecting the east with the Pacific, traversing states as well as territories, and employing the agency of state as well as federal corporations."

The foregoing was cited with approval in Luxton v. North River Bridge Co., 153 U. S. 525.

Just as our conception of interstate commerce has gone from waterways to railways and from railways to highways and bridges, so we now have reached the point where even these methods are unsatisfactory for the transportation of such a product as natural gas, which must be carried from the places in the Nation where it is found to the places where it is required for industrial, commercial and residential use. This has been recognized by Congress, first, by declaration in the Natural Gas Act, supra, that ". . . the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest", and, secondly, in the amendment to the act in 1947 whereby it conferred on holders of certificates of public convenience the right of eminent domain. We agree with the conclusion reached in the Thatcher case, supra, where Russell, C. J., said:

"There can be no quarrel with the statement that the transportation or movement of natural gas from the gas producing fields across state lines for interstate distribution and interstate sale in States far removed from the point of production, is interstate commerce. True, for many years, Congress did not see fit to employ its constitutional right to regulate such

commerce. At the time of the passage of the Natural Gas Act in 1938, there were already in existence many companies engaged in the interstate transportation of this product, and some features of its distribution and sale were subject to the regulatory control of the respective States. The very provision of the Constitution now involved, however, could be and was a bar which prevented regulation by the States from being fully effective in a business which was experiencing a rapidly increasing growth in the transportation and consumption of natural gas for industrial, commercial and residential use. In 1938, as evidenced by the Natural Gas Act of that year, Congress determined to exercise its power to regulate this interstate commerce to the extent as is in the statute set forth, supplemented by the amendments of 1942 and 1947. . . . Prior to the amendments of 1942 and 1947, the constitutionality of the Act as a valid exercise of the power to regulate interstate commerce, had been upheld. Implicit in the provisions of the statute are the facts, among others, that vast reserves of natural gas are located in States of our nation distant from other States which have no similar supply, but do have a vital need of the product; and that the only way this natural gas can be feasibly transported from one State to another is by means of a pipe line. None of the means of transportation by water, land or air, to which mankind has successively become accustomed, suffices for the movement of natural gas. Consideration of the facts, and the legislative history, plan and scope of the Natural Gas Act, and the judicial consideration and application the Act has received, leaves us in no doubt that the grant by Congress of the power of eminent domain to a natural gas company, within the terms of the Act, and which in all of its operations is subject to the conditions and restrictions of the statute, is clearly within the constitutional power of Congress

to regulate interstate commerce. . . . There is no novelty in the proposition that Congress in furtherance of its power to regulate commerce may delegate the power of eminent domain to a corporation, which though a private one, is yet, because of the nature and utility of the business functions it discharges, a public utility, and consequently subject to regulation by the Sovereign. Luxton v. North River Bridge Co., 153 U. S. 525, 14 S. Ct. 891, 38 L. Ed. 808; Cherokee Nation v. Southern Kansas Railway Co., 135 U. S. 641, 10 S. Ct. 965, 971, 34 L. Ed. 295. . . . Counsel for appellant seeks to distinguish the Luxton and Cherokee Nation cases, supra, upon the ground that the corporations there authorized to exercise the power of eminent domain were common carriers whose services were available to each and all alike. This distinction, however, in no way detracts from the principle ruled in view of the kind of business and product here involved. This is, in fact and in law, as by the Natural Gas Act declared, a public business and subjected to public control as to its interstate features and, indeed, as to this it can not be conducted at all unless its operations are determined by the Federal Power Commission to be compatible with public convenience and necessity." We, therefore, feel it is clear that the act of Congress gives this corporation a prima facie right to condemn and that the purposes set forth in the resolution of the board of directors, being in the very words of the act of Congress, set forth a public purpose.

Defendant, however, further argues that the present attempted exercise of such power is illegal and unconstitutional. The basis for this argument is that the certificate of public convenience issued by the Federal Power Commission, in addition to giving plaintiff the right to transport natural gas for sale to certain designated companies, also gives it the right to transport natural gas owned by the Sun Oil Company, a private corporation, from the latter's private reserves

in the States of Louisiana and Texas to its private refinery in Marcus Hook. Defendant, therefore, contends that such use is a private one and that private property may not be taken by eminent domain for a private use. A similar contention was made in C. O. Struse & Sons Co. v. Reading Co., 302 Pa. 211, where the Phila. and Reading Railroad Co. attempted to condemn land in order to construct a lateral or branch road to the plant of Sears, Roebuck & Co. The court there considered the volume of business done by the latter company and held that the branch would, therefore, not only accommodate Sears, Roebuck & Co. but a large percentage of the public. The court held that:

"Wherever it appears from the attending circumstances that a section of road about to be constructed will in some direct way tend to contribute to the general public welfare, or the welfare of a considerable element of the public, it cannot be said that it will not serve a public use; this principle is now too well established in Pennsylvania to be questioned." We feel that such reasoning is applicable to the present situation. However, even if this portion of the contemplated transportation should be considered to be private use, it at least does not deprive plaintiff of the right to condemn property for the unquestionably public use, which would be the major portion of its business. It is true that a statute authorizing taking of private property for uses partly public and partly private is void where the private use is so combined with the public use that the same cannot be separated. In this case, however, the public use and the so-called private use could very clearly be separated and, if necessary, the private use enjoined in appropriate proceedings.

Defendant further contends that plaintiff is not entitled to exercise the right of eminent domain because there is no procedure in Pennsylvania available to the parties. With this we cannot agree. The 1947

34

amendment to the Natural Gas Act provided, 15 U. S. C. §717f(*h*) ;

"When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000."

This amendment sets forth the practice and procedure when the action is brought in the district courts and requires that it conform with similar practice in the State courts. It was unnecessary for the act to make a similar provision concerning actions brought in the State courts. That would follow as a matter of course. If there were no condemnation statutes at all in the Commonwealth of Pennsylvania there might be some point to defendant's contention but there is an act in Pennsylvania governing natural gas companies and in which is set forth, inter alia, the procedure when such companies exercise the right of

eminent domain. This is the Act of May 29, 1885, P. L. 29, as amended. Section 10 of that act grants the right of eminent domain with the following limitation:

". . . the right, however, shall not be exercised as to any burying ground or dwelling, passenger railroad station-house, or any shop or manufactory in which steam or fire is necessarily used for manufacturing or repairing purposes. . . ." We feel that this is the act which is most similar to the Federal Natural Gas Act.

Defendant points to the Act of June 2, 1883, P. L. 61, as amended, which relates to corporations formed for the purpose of transportation and storage or distribution of oil or any petroleum product by means of pipe lines, etc., and argues that if any Pennsylvania act is to apply, the latter act is the appropriate one. It probably so argues because the latter act prohibits the pipe line from passing through "any burying ground or place of public worship or any warehouse, mill, manufactory, store, school or dwelling house, hospital or institutional home, without the consent of the owner or owners thereof being first had and obtained." Defendant, being a hospital, therefore contends that its consent is necessary. However, we do not believe that natural gas is a petroleum product. In Webster's New International Dictionary, second edition, page 1833, we find:

"Petroleum is usually obtained by pumping or is forced out of drilled wells by the pressure of the gas occurring with it. It is prepared for use by fractional distillation into gasoline and naphthas, burning oils (as kerosene), lubricating oils and waxes, fuel oils, asphalts and road oils, coke, etc. These products may be further separated and refined."

These, then, are the nature of petroleum products, whereas natural gas, like petroleum itself, is a nat-

ural resource. In Volume 17 of the Encyclopedia Britannica, at page 668, it is said:

"Whenever petroleum occurs in nature, natural gas is generally found in the same locality or region. Gas, however, is less restricted in its distribution than is oil, and numerous gas pools exist where no petroleum occurs in close proximity."

Therefore, we feel that the procedure set forth in the Act of 1885 adequately sets forth the procedure and protects the owner from an unjust taking without just compensation. This is due process.

As was stated in Williams v. Transcontinental Gas Pipe Line Corp., 89 F. Supp. 485:

"The right to condemn having been given by Congress in the field of interstate commerce where it is supreme, all that is needed to make the grant effective is a State court procedure which meets the requirements of due process and which can be reasonably utilized for the defendant's purpose."

So the Act of 1885, supra, is an effective court procedure in this Commonwealth and meets all such requirements.

One further question remains. It is contended that the resolution adopted by the board of directors of the corporation fails to indicate that the specific property was condemned by the board of directors. The resolution was attached to the petition and the material part thereof reads as follows:

"Now, Therefore, the following Resolutions are hereby adopted: Resolved that Transcontinental Gas Pipe Line Corporation, in the exercise of its rights as aforesaid does hereby appropriate and condemn a right-of-way easement for the purpose of locating, constructing, operating, owning and maintaining its pipe line (with necessary valves, regulators, meters, fittings, appliances, tie-overs and appurtenant facilities) for the transportation of natural gas in Inter-

state Commerce for ultimate consumption by the public, which said pipe line shall not exceed thirty (30) inches in diameter, over, across, under or through the pertinent lands owned or reputed to be owned by and situated in the Commonwealth of Pennsylvania, all as follows:

| Owner(s) | Township | County |
|---|---|---|
| Mercy Hospital of Chester | Bethel | Delaware |

said right-of-way easement being described or referred to according to the respective courses and distances on the line of survey of said pipe line shown on the plan of said land as now in the course of preparation in final form by Fish Constructors, Inc., and/or Southern Mapping & Engineering Company, with a description of said lands and of said right-of-way easement appearing thereon or attached thereto (the final form of said plan being based upon a certain Alignment or Abstract Sheet indicating the projected course of said pipe line over certain lands including the property in question, as heretofore prepared by Fish Constructors, Inc., and surveyed and mapped by Southern Mapping & Engineering Company, a copy of which Alignment or Abstract Sheet was submitted at this meeting) : Resolved that the final plan and survey of the course of said line over the said property be and the same is hereby accepted and adopted and by reference incorporated in these minutes and it is directed that a copy thereof may be filed in any proceeding that may be instituted on behalf of this Company in any court of the Commonwealth of Pennsylvania or of the United States of America:"

It is argued that because the resolution refers to the "plan of said land as now in the course of preparation in final form", the resolution was premature. However, a close reading of the resolution will show that the directors had before them at the meeting the alignment or abstract sheet indicating the projected

course of the pipe line over the lands, including the property in question, and that the plan which was in the course of preparation was the enlarged portion thereof showing the metes and bounds over the property of the defendant. However, the resolution goes on to say that the final plan and survey was accepted and adopted and the dates confirm this. The plan of defendant's property attached to plaintiff's petition is dated June 15, 1950, and the resolution is shown to have been adopted on June 23, 1950. Moreover, even if the only plan before the directors was the alignment or abstract sheet indicating the projected course, without metes and bounds, this was all that could be required. It was so held in Foley et al. v. Beech Creek Ext. R. R. Co., 283 Pa. 588, 594, where it was said:

"It (the resolution) adopted a line of railroad marked on the ground, and indicated the route appellee proposed to cover between the terminals named. The resolution, without more, not only fixed and determined the center line, but, unless otherwise expressed, operated as an appropriation of the land permitted by the act on which to construct the railroad. . . . The definitive discretionary act is the location on the ground of the line, and its adoption by corporate action. Establishing by metes and bounds the necessary width on the various tracts over which the road passes is contemplated by the act as an engineering detail. It is unnecessary, and manifestly so, that corporate action should precede this latter designation on the various properties to be taken.

"When the petition for approval of the bond is filed, accompanied by a map designating the extent of the land to be taken, the owner knows precisely the quantity of land the company proposes to take. If he objects to it as unnecessary, he can protest, as was done in this case. But the lack of corporate action as to each piece of land would not stop the proceedings or defeat

the action, provided the company justifies the taking of additional land over sixty feet to be within the act by showing the necessity therefor. This is a matter of engineering skill, considering the country through which the proposed road passes, the contour of the land and the character of the earth's strata with which, at the established grade, it comes in contact. There may be places where, because of the geological formation encountered, the cuts and fills will spread out to an unusual extent; at others it will be confined to a restricted area, due allowance being made for the action of the elements where cuts and fills are met."

In the present case the petition not only shows a map designating the exact extent of the land to be taken but there is also a legal description. Therefore, the owner knows precisely the quantity of land the company proposes to take.

It follows, therefore, that defendant's petition to dismiss plaintiff's petition must itself be dismissed. However, as pointed out in 14 Standard Pa. Practice 266, the approval of a bond does not constitute an adjudication of the right of the condemning body to appropriate the property. Therefore, our order will be without prejudice to any right of defendant to raise this question at a proper time and in a proper manner.